*May Term,*
*1830.*

FRAKES
*v.*
BROWN.

---

## FRAKES *v.* BROWN.

If a wife obtain a decree for a divorce and for a certain sum as alimony, the decree for the alimony is a lien on the real estate of the husband.

The reversal of a judgment on error, after a sale of land under it on execution, does not affect the purchaser's title.

A fieri facias, by statute, expressly commands the sheriff to make the money of the goods and chattels, lands and tenements, of the debtor.

A purchaser of land at sheriff's sale, is not obliged to show that the debtor had not personal property to satisfy the judgment. It is only necessary for him to show the judgment of a competent Court, and the kind of execution which authorises the sheriff to sell. He has a right to presume that all the intermediate proceedings are correct.

A wife has a lawful claim upon her husband for her maintenance; and if, during the pendency of her petition for a divorce and alimony, a conveyance of his land be executed by the husband in order to defraud his wife of her right to a support, and be received by the grantee with the same fraudulent design, the conveyance as to her is void.

During the pendency of a petition for a divorce and alimony, the Court may make an order on the defendant requiring him not to dispose of any of his real or personal property: but the purchaser of real estate from the defendant will not be affected by the order, unless he have actual notice of its existence; the pendency of the suit and entry of the order, not being sufficient of themselves to avoid the conveyance.

A deed, fraudulent as to a judgment-creditor, may be set aside at the suit of the purchaser at sheriff's sale under the judgment.

To render a deed fraudulent and void as to creditors, there must be fraud in the grantee as well as in the grantor.

The purchaser of real estate at sheriff's sale may obtain a decree setting aside a deed which had been made to defraud the judgment-creditor, and securing the purchaser's title against any claims under the fraudulent deed; but the decree cannot vest the absolute fee in the complainant.

2b 295
139 197

APPEAL from the *Decatur* Circuit Court.

BLACKFORD, J.—This was a bill in chancery, in which *Brown,* the complainant, prays that a conveyance of a tract of land, made by *Reuben Jones* to the defendant, may be set aside as fraudulent and void.

The bill states, that, at the *September* term, 1825, of the *De-*

*Tuesday,*
*May 4.*

May Term, 1830.

FRAKES
v.
BROWN.

catur Circuit Court, *Martha Jones* filed a petition against her husband, *Reuben Jones,* for a divorce and alimony; that, during the same term, the Court made an order upon the defendant, not to dispose of his property until the suit should be determined; that, at the *March* term, 1826, the petitioner obtained a divorce, and a judgment for the sum of 550 dollars as alimony; that, by virtue of a fieri facias, issued upon this judgment, the land in question was sold in *November,* 1826, and the complainant was the purchaser. The bill further states, that, during the pendency of the suit for a divorce, viz. in *November,* 1825, the said land was conveyed fraudulently and without consideration, by *Jones* to *Frakes,* to avoid the consequences of Mrs. *Jones'* suit. Both the parties to the deed are charged by the bill with notice of the pendency of the suit, and with fraud.

A demurrer and plea to the bill were filed; but these may be considered as overruled by the answer, which covers the whole case. The defendant, in his answer, insists that he is a *bona fide* purchaser for a valuable consideration; denies all fraud; and avers that he had no knowledge of the order of the Court, nor of the pendency of the suit, referred to in the bill.

The material facts in this case are as follows:—A short time before the sitting of the Circuit Court in *Decatur* county, in *September,* 1825, *Reuben Jones* and his wife had a dispute and. separated. At that term of the Court, Mrs. *Jones* filed a petition for a divorce and alimony; and obtained an order against her husband, restraining him from disposing of his property until the cause should be decided. At the *March* term, 1826, the petitioner obtained a divorce, and a judgment for the sum of 550 dollars as alimony. Upon this judgment, an execution of fieri facias issued, and was levied upon the land in dispute as the property of *Jones.* The complainant purchased it in *November,* 1826, at the sheriff's sale.

During the pendency of this suit for a divorce, and subsequently to the restraining order, viz. about the first of *October,* 1825, *Jones,* the husband, executed a bill of sale to *Frakes,* the defendant in the present suit, for the whole of his personal property, except a few small articles which he sold to others. The property thus sold to *Frakes,* consisted of horses, cattle, hogs, sheep, corn, and beds. *Jones* stated at the time of this sale,

that he was putting his property out of his hands to prevent his wife from getting any of it. About the same time, *Jones* took his children to *Frakes'* house to be taken care of, and went himself not long afterwards to the county of *Ripley*, and resided with *Frakes'* son. *Frakes*, having sold a considerable part of this property, and received the money for it, went into *Ripley* county to see *Jones*, who had then been there eight or ten days. On the evening of his arrival, he told *Jones* that he had brought him the money to pay him for the land; and, the next morning, he and *Jones* went together to *Versailles*. There, the conveyance of *Jones'* land to *Frakes*, charged in the bill to be fraudulent, was written at their request by the clerk of the Court. At this time, *Frakes*, in presence of the clerk, paid *Jones* about 40 dollars, and gave him a note for some amount besides. This conveyance is dated the 21st of *November*, 1825. Immediately after this transaction, *Frakes* returned to his home in *Decatur* county; and, in the latter part of *December* following, *Jones* also returned to that county.

At the time of the separation of *Jones* and his wife, *Jones* and *Frakes* resided in the same neighborhood. Their circumstances were moderate. *Frakes* owned 80 acres of land and some personal property; but he was not able to buy any more land without first selling his own.

Some time after these things had taken place, *Nathan Crume*, the son-in-law of *Frakes*, heard both *Jones* and *Frakes* say, at different times, that all the buying and selling between them, was for the purpose of preventing Mrs. *Jones* and her lawyers from getting any of her husband's property. He also heard *Frakes* say, that he received the money from *Jones*, and paid it back to him for the land in the presence of the clerk of *Ripley* county. Both *Nathan Crume* and his wife, the daughter of *Frakes*, heard *Jones* tell *Frakes* that he wished him, when he sold the land, to pay *Joseph Jones* his money; and that the balance he, *Reuben Jones*, would put in his pocket and go away. To which *Frakes* replied by saying—yes. They also heard *Frakes* say, that were it not for his daughter *Betsy* he would give up the property to *Jones*.

There is a great deal of evidence as to whether *Jones* and *Frakes*, at the time when the land was conveyed, knew of the pendency of the suit for the divorce, and of the restraining or-

der mentioned in the bill. Taking all the depositions on the subject together, we are satisfied that they both knew, at that time, that there were some proceedings depending in Court against *Jones* at the suit of his wife, in consequence of his illtreatment of her, which might affect his property. But, at the same time, there is no sufficient proof that they knew what was the precise nature of those proceedings, or that the Court had made the order alluded to.

The case was submitted to the Circuit Court upon bill, answer, and depositions. That Court set aside the deed from *Jones* to *Frakes* as fraudulent; and decreed that *Brown* was the owner in fee-simple of the land, and that he should forever be quieted in his title acquired under the sheriff's sale. *Frakes* and all claimants under him, were also perpetually enjoined from disturbing *Brown's* possession of the premises. From that decree the defendant has appealed to this Court.

The first objection to the complainant's claim is, that the sheriff had no authority to sell the land, admitting it to have belonged to *Jones.* It is said, that real estate is not liable on a decree for a divorce and alimony. The answer to this is, that here is a judgment against *Jones* for a certain sum of money, rendered by a Court having jurisdiction of the cause; and that every judgment of this kind is, by statute, a lien on real estate. It is not for this Court to look beyond the judgment in the case before us. It must be considered as having the same effect as all other judgments for the payment of money, whilst it stands unreversed and remains unsatisfied. Indeed, were the judgment erroneous, and had it been reversed since the sheriff's sale, that circumstance would not affect the purchaser's title. *Manning's case,* 8 Co. Rep. 187.—R. C. 1824, p. 195. It is also said, that an execution of fieri facias, on which this land was sold, does not authorise a sale of real property. This is certainly a mistake. The writ denominated by us a fieri facias, is an execution expressly commanding the sheriff to make the money of the goods and chattels, lands and tenements, of the debtor. It is also said, that it should appear that *Jones* had not personal property to satisfy the judgment. This is not necessary. A purchaser at sheriff's sale is only obliged to show the judgment of a competent Court, and the kind of execution that authorises the sheriff to sell. He has a right to presume that

all the intermediate proceedings are correct. *Armstrong* v. *Jackson, Nov.* term, 1822 (1). There are no grounds, -therefore, for the first objection made by the appellant.

The other objection to the complainant's right under the sheriff's deed is, that, at the time the judgment was rendered, the land did not belong to *Jones;* the appellant having previously purchased it of him, *bona fide,* and for a valuable conside ration. That the purchase was made by *Frakes,* previously to the judgment, is admitted by the bill; but that purchase, the complainant contends, was made to defraud Mrs. *Jones,* and was consequently void. The petitioner for the divorce, as the wife of *Jones,* had a lawful claim upon him for her maintenance; and if the conveyance was made by *Jones* and received by *Frakes,* with the intention of cheating Mrs. *Jones* out of her right to a support, it was certainly void by the statute of 1824, against fraudulent conveyances.

The first ground relied upon to show the conveyance void as to Mrs. *Jones,* is, that it was made pending her suit, and subsequently to the restraining order. We do not agree with the appellant, that such an order cannot extend to real estate: on the contrary, we conceive it may by virtue of the statute of 1824, p. 157. But, at the same time, in order to render it obligatory, there should be actual notice of its existence. The mere pendency of the suit, and the entry of the order, are not of themselves sufficient to avoid the conveyance. In the record before us, there is no satisfactory proof that the proceedings in Court against *Jones* were known to him and *Frakes,* when the deed was executed; and the case must consequently be decided, without any reference to those proceedings.

The other ground insisted upon against this conveyance is, that there is sufficient evidence to show it fraudulent, independently of the pendency of the suit for a divorce. Upon this point, we entirely agree with the complainant. The parties to the conveyance resided in the same neighbourhood, and were in moderate circumstances. *Frakes* knew that *Jones* and his wife had recently had a dispute and had separated; and he was bound to know that Mrs. *Jones* had a lawful claim against her husband for maintenance. Under these circumstances, and without being able, in the opinion of his neighbours, to purchase any real estate in addition to the small tract on which

he lived, *Frakes* suddenly buys the whole of *Jones'* personal property, with a trifling exception, and, shortly afterwards, his land also. It is in proof too, that when *Jones* thus transferred his personal property, he stated his object to be to prevent his wife from getting any of it. If the case stopped here, we should be inclined to set aside the deed from *Jones* to *Frakes* as fraudulent and void as to Mrs. *Jones*, and as to the complainant also who is a purchaser under her judgment. We should be disposed to set it aside, not for *Jones'* fraud alone—that of itself would be insufficient—but because *Frakes* might be viewed as the fraudulent assistant of *Jones* in the attempt to cheat his wife out of her maintenance.

In fixing upon *Frakes*, at this stage of the cause, the character of a fraudulent purchaser, we should decide against him from circumstances merely; and not from any positive evidence of his fraud. The case, however, does not rest here. There is positive evidence that *Frakes* is not a purchaser for a valuable consideration, nor *bona fide*. The depositions of his son-in-law, and his own daughter, are perfectly satisfactory to the Court, that he received the conveyance for the land in question, without any real consideration; that the object of both *Frakes* and *Jones* was to secure the property from Mrs. *Jones'* claims; and that there existed a trust between them, according to which the property was, at some future period, to be re-conveyed to *Jones*, or its proceeds paid to him. An attempt was made to impeach the testimony of the son-in-law, but, we think, without success. His evidence is confirmed by that of his wife, and corroborated by a variety of circumstances.

We have now taken a general view of this case, and have come to the conclusion that the appellant's objections to the sheriff's sale to *Brown*, the complainant, cannot be supported; and that the deed from *Jones* to the appellant is fraudulent and void. The decree of the Circuit Court, therefore, so far as it relates to the setting aside of the deed from *Jones* to *Frakes*, and the quieting of the title of *Brown* against any claims under that deed, and as it relates to the costs, must be affirmed. The other part of the decree, which adjudges that *Brown* is the owner in fee-simple of the premises, must be reversed.

*Per Curiam.*—The decree so far as it relates, &c. is affirmed. The other part, &c. is reversed. To be certified, &c.

*M'Kinney*, and *Test*, for the appellant.
*Wick*, for the appellee.