## Mays *v.* Rose *et al.*

An application for the appointment of a receiver is one which is addressed to the sound discretion of the court, to be exercised as an auxiliary to the attainment of the ends of justice.

In order to obtain the appointment of a receiver, the plaintiff must show, first, either that he has a clear right to the property itself, or that he has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim. Secondly; that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss, from the neglect, waste, misconduct or insolvency of the defendant.

A purchaser of real estate at sheriff's sale may apply to the chancellor to set aside a deed of the property so purchased, which had been made to defraud the judgment creditor, and the court will extend to the purchaser the same remedies and measure of relief that would have been afforded to the judgment creditor himself.

A motion to appoint a receiver will not be heard until the defendant has had notice, if it be practicable to give notice.

This bill charges that Frederick C. Rose, one of the defendants, had in his possession a large estate, consisting of town lots, in the city of Jackson, goods, wares, and merchandise, choses in action, and money; that he was indebted to several persons in a large amount, and being so indebted, he designed to defraud his creditors; that in pursuance of this design, on the 5th of November, 1839, he executed his deed to Benjamin Rose, another of the defendants, and his brother, conveying to him, purporting to be for the sum of nineteen thousand dollars, the lots in the city of Jackson; that he retained the possession of said property; and as a means of doing so, and as a cover for the fraud, and to enable the said F. C. Rose to carry on the business, and to have the sole control, and management, and beneficial interest in the said property, the said Benjamin Rose, on the 2nd of December, 1839, made a power of attorney to him, giving him a general and unlimited power to transact all his business, and to use, sell or dispose of the

property at his will and pleasure. That under colour of this power of attorney, said Frederick conducted and carried on an extensive business in buying and selling various articles, and particularly in the' purchase of cotton; and that all these transactions were carried on by the money of said Frederick in reality, though he professed to act as the agent of said Benjamin; that said Benjamin is a young man, recently arrived in the country, scarcely able to speak the English language; that he was very poor, had been acting in the capacity of a clerk for his brother, was dependant for support solely upon his own exertions and the bounty of his brother, and had no means of his own whatever to have enabled him to become the purchaser of property for so large an amount; and that this pretended sale and conveyance of the property was fraudulent, and designed to hinder and defraud the creditors of said Frederick. That by virtue of several executions, in favor of Elihu Shields, Scott & Avery, and the complainant, amounting in all to about the sum of eight or nine thousand dollars, the said houses and lots were levied on and sold by the sheriff of Hinds county, and complainant became the purchaser, and received the deed of the sheriff for the same. That said Frederick, as the pretended agent of his brother, retains the possession of said property, and has rented out the same to various individuals, and is receiving the rents and profits of the same, and refuses to relinquish said pretended claim, and thereby throws a cloud upon the title of said complainant, and who, by reason of said refusal, is compelled to submit to a loss of the rents and profits which arise from the said houses and lots. The bill prays that a receiver be appointed to collect the rents and profits arising out of the said houses and lots, during the pendency of this suit, to hold them subject to the order of the court, upon its decision; to keep said premises in repair, and rent out the same; and also that the title of complainant be quieted, and he be put in possession of the same, &c.

Upon the motion to appoint a receiver, the complainant also produced the affidavits of E. M. Avery and William H. Elam, who certify that in 1839, they were in the employment of said Frederick C. Rose, as clerks in his store; that some time in October, between the fifth and tenth, Benjamin Rose came also

Mays *v.* Rose *et al.*

into the employment of his brother, who had accidentally met him as he went on to the north to purchase goods; that Frederick had to purchase clothes and pay his expenses to this state; that they had every opportunity. of knowing about the circumstances of said Benjamin, and that he had no means whatever of his own; that he never spoke of any money that he had, nor did they know of any money ever having passed from said Benjamin to said Frederick, for said houses and lots; and that they are confident no such sum of money, as nineteen thousand dollars, could have passed without their knowing it. Notice of the motion to appoint a receiver was also given.

Rucks and Yergers for motion to appoint a receiver.

1. One of the heads of jurisdiction in a court of equity is, to protect property pending litigation in a court of law, and it necessarily follows, that upon a proper case, a court of equity will protect property pending litigation before itself, by the appointment of a receiver. Stillwell *v.* Williams, 6 Mad. Rep. 38. The question, then, to which I will direct the attention of the court is, whether the foregoing presents a proper case for the appointment of a receiver?

The exercise of the right to appoint a receiver, rests in the sound discretion of the court, and in a case where it must seem fit and reasonable that some indifferent person, under approved security, should receive the issues and profits, for the greater safety of all the parties concerned. Verplank *v.* Caines and Wife, 1 John. Ch. Rep. 57; 2 Sto. Eq. 133; 3 Atk. 564. And the true principle which should govern the court in the exercise of such a discretion, is that the fund is in danger. Hopk. Rep. 459. We contend that this is a case where the fund is in danger, and is therefore a proper subject upon which a court of equity should exercise this power. It is one given for a valuable and important purpose, to aid a party who has rights, that he cannot obtain immediately, and which are likely to be destroyed, if not restrained. The bill charges that the defendant has been guilty of a fraud in the transfer of his property; and the facts stated in the bill, and sworn to, establish a most glaring and palpable case of fraud. A receiver will be appointed in cases where a fraud is shown, and the fund is in danger

59*

of being wasted. 1 Moll. Rep. 27, cited; 3 Har. & Bar. Eq. Dig. 557. And there are cases where the court will, before answer, appoint a receiver, upon affidavit, in cases of fraud, combined with danger to the property. 2 Mad. Chan. 233; 16 Ves. Rep. 59; 3 Mer. Rep. 697; Van v. Barnett, 2 Bro. Ch. Cas. 158; 13 Ves. 108, Huguenin v. Basely; Ibid, 266, Middleton v. Dodswell; 18 Ves. 283, Duckworth v. Trafford; 1 Ball & Beatty, Maguire v. Allen. There can be no doubt of the grossest fraud being committed in the case before the court. In all the circumstances connected with the transaction, the *indicia*, which are laid down in the books, are discoverable. The indebtedness of the party, the conveyance to a brother—that brother poor, and unable to pay the amount—keeping possession of the property and using it as his own, under a pretended power of attorney, the receipt of the rents and profits of the houses,—present a case of fraud so strong, that the most sceptical cannot doubt of the intention with which the property was transferred from Frederick to Benjamin Rose.

In cases of *elegit*, and conflicting legal and equitable debts and rights upon the estate, it is a common course to appoint a receiver for the benefit of all concerned. 2 Stor. Eq. 131; 1 Swanst. Rep. 83; 2 Ib. 125. And in cases, also, where an estate *is held by a* party under a title obtained by fraud, either actual or constructive, a receiver will be appointed. 2 Stor. Eq. 136; 13 Ves. 105; 6 Madd. Rep. 48; S. C. Jacob's Rep. 280.

But it is not unfrequent for a bill *quia timet* to ask for the appointment of a receiver against a party who is rightfully in possession, or entitled to the possession of the fund, where the facts alleged and proved show that there has been an abuse of the fund; that there is some loss or probable loss of the fund; or a waste or misapplication of them; or there is danger, from the bankruptcy, insolvency, or personal fraud or misconduct of the party, equity will withdraw it, and place it in the hands of a receiver. 2 Stor. Eq. 136; Jer. Eq. Juris. 174, 249, 250. See Edwards v. Crenshaw, 1 McCord's Chan. Rep. 254, for a case where a receiver was appointed.

2. The court will appoint a receiver before answer, upon affidavit, whenever the fund is in danger. 13 Ves. Rep. 266; 16 Ib. 69; 18 Ib. 283; 4 Price's Exc. Rep. 346; 2 Bro. Ch. Cases, 157; 1 Jac.

and Walk. Rep. 627; or where justice requires it, and the merits appear by affidavit. 1 Smith's Chan. Prac. 630. See 2 Jac. and Walk. 236, Boehm v. Wood.

In the case of Bloodgood v. Clark, 4 Paige's Ch. Rep. 576, the chancellor says, "The vice chancellor was wrong in supposing, that a receiver could not be appointed, until after the defendants had put in their answer. By the ancient practice of the court of chancery in England, a receiver was not appointed until after the coming in of defendant's answer. This practice appears to have been first broken in upon by Lord Apsley, in 1773; and Lord Kenyon, the master of the rolls, appointed a receiver, before answer, in the case of Van v. Barnett, in 1787, 2 Bro. Ch. Cas. 157." The chancellor continues, "And it appears to be well settled, both here and in England, that a receiver may be appointed before answer, if the complainant can satisfy the court that he has an equitable claim to the property in controversy, and that a receiver is necessary to preserve the same from loss. In the case of creditors' bills, (of which the case was one;) where the return of the execution unsatisfied presupposes that the property of the defendant, if any he has, will be misapplied, and entitles the complainant to an injunction in the first instance, it seems to be almost a matter of course, to appoint a receiver to collect and preserve the property during the litigation. And where the sworn bill of the complainant shows that he has an equitable right to all the funds and property of the defendant to satisfy his debt, if the right of the complainant is not denied by the defendant, in answer to the application for a receiver, there can be no good reason why the complainant should not have a receiver appointed to preserve the property from waste or loss." The bill in the present case is in the nature of a creditor's bill, indeed it is one. It is brought for the purpose of quieting the title of the complainant, and ripening that which is now an imperfect or equitable title into a legal one, by the action of this court. It shows the indebtedness of the defendant; the fraud by which he attempts to evade the payment of the debt; the equitable title which he has in the property, by virtue of the sale, under the execution, until the decision of the court shall determine in whom the legal title shall vest, under the sale made to Benjamin Rose. The bill is sworn to, the complainant has not

denied although he has notice, the right of the complainant to the property for the satisfaction of his debt. The fraud practised by the defendant, and the danger of the loss of the rents and profits of the property, if a receiver is not appointed, and the language and reasoning of the chancellor, in the case cited, will apply in all their force to the present case.

3. The appointment of a receiver does not involve a decision upon any right which either party may have in the property. It can only be made at the instance of a party who has an acknowledged interest or a strong presumption of title in himself alone, or in common with others, and where the property itself, or its rents and profits, are in danger of being materially injured, or totally lost. Tur. and Russ. Rep. 422, cited 3 Har. and Bar. 555, pl. 20; 2 Stor. Eq. 133; 3 Atk. 564. If, upon the coming in of the answer, the conveyance from Frederic to Benjamin Rose should be declared an honest and *bona fide* one, no injury will result to the defendants from the appointment. If on the other hand it should be decreed to be fraudulent, as we conceive it must be from the facts sworn to, it would be right and equity that he should have the benefit of that power vested in a court of equity, without which he could not secure that which justly belonged to him, and which would otherwise be to him a total loss.

Wm. Thompson, *contra.*

The bill alleges that Frederic C. Rose, for the purpose of defrauding his creditors, made a pretended sale of a large real estate to his brother Benjamin Rose; that judgments were afterwards obtained and sales made by the sheriff by virtue of executions issued thereon, and that the complainant became the purchaser of the property which had thus been conveyed from said Frederic C. to Benjamin Rose. Complainant files his deed. Bill states that the property had been rented by Frederic C. Rose under a pretended power of attorney from Benjamin Rose; that he the said Frederic is receiving the rents and applying them to his own use.

Bill prays that the deeds from Frederic C. Rose to Benjamin Rose may be cancelled, and the title of the complainant be cleared of the cloud which hangs over it by the alleged fraudulent conveyance, and that a receiver be appointed to take possession of the

property and receive the rents; alleging for reasons stated in the bill that the rents will be lost if said Frederic C. Rose or Benjamin are allowed to collect them.

The question is, whether the case made out by the bill and affidavits falls within any one class of cases in which the court of chancery will appoint a receiver. It is contended for the defendants that it does not.

Judge Story, in the second volume of his Commentaries, pages 131, 132, speaking of bill *quia timet* and the appointment of a receiver, says that "it may be granted in any case of equitable property upon suitable circumstances." See his illustrations and examples. The present case does not fall under that class. At page 135 of the same volume, Judge Story says, "We have seen, that in cases of *elegit* and conflicting legal and equitable debts and rights upon the estate, it is a common course to appoint a receiver for the benefit of all concerned."

The present does not fall under that class of cases. At page 136, the author says, "But it is not infrequent for a bill *quia timet* to ask for the appointment of a receiver against a party who is rightfully in possession, or entitled to the possession of the fund, or has an interest in its due administration. In such cases courts of equity will pay a just respect to such legal and equitable rights and interests of the possessor of the fund, and will not withdraw it from him by the appointment of a receiver, unless the facts averred and established in proof, show that there has been an abuse or a danger of abuse on his part. For the rule of such courts is, not to displace a *bona fide* possessor from any of the just rights attached to his title, unless there be some just, equitable ground for interference. This principle may be easily illustrated in the common case of executors and administrators. They are by law entrusted with authority to collect and administer the assets of the deceased party, and courts of equity will not interfere with their management and administration of such assets upon slight grounds." By adverting to the words of the author more fully than to be seen in the above extract, it will be discovered that, taking the principle stated and examples and illustrations given by him, the present case before the chancellor is not

embraced in the last above class of cases stated by Judge Story, nor affected by the principle intended by him to be illustrated.

Judge Story, after stating various other cases in which a court of equity will interfere, none of which cases are analogous to the present, says, at page 140, "The preceding remarks are principally, but not exclusively, applicable to cases of equitable property, and whether the right of enjoyment thereof be present, or future, or contingent. In regard to legal property, it is obvious that where the right of enjoyment is present, the legal remedies will generally be found sufficient for the protection and vindication of that right. But where the right of enjoyment is future or contingent, the party entitled is often without any adequate remedy at law for any injury which he may, in the mean time, sustain by the loss, destruction or deterioration of the property in the hands of the party who is in the present possession of it. Thus, for instance, if personal property should be given by a will to A for life, and after his death to B, there is, as we have seen, at law, no remedy to secure the legacy to B, whether it be of specific chattels, or of a pecuniary nature. At page 142, treating of the same subject, he says, "In all cases of this sort, where there is a future right of enjoyment of personal property, courts of equity will interpose and grant relief upon a bill *quia timet*, where there is any danger of loss or deterioration or injury to it in the hands of the party entitled to the present possession. We have already had occasion to take notice of the manner in which this remedial jurisdiction is applied in cases of legacies, whether pecuniary or specific, and whether vested or contingent. The same doctrine is applied to cases of annuities charged on the personal estate."

The doctrine in the above cases, it is apprehended, has no application to the case under consideration, which is a contest between two adverse legal titles.

The foregoing is a notice of the principle of appointing receivers, which comes nearest the present case, but still steers clear of it, as noticed by Judge Story, except one class that he names and which will be noticed. At page 136 of his work he says, "In cases also where an estate is held by a party under a title obtained by fraud, actual or constructive, a receiver will be appointed." It was believed upon reading the above paragraph that

the author alluded to cases between vendor and vendee, where the title was obtained by fraud and imposition on the grantor, and not to adverse titles, where the defendant does not claim from the complainant. Judge Story refers to the case of Hugonin v. Basely, 13 Ves. 105; Stillwell v. Williams, 6 Madd. R. 48; Jacob's R. 280; and upon the examination of these cases, it would seem that counsel were correct in their understanding of the doctrine laid down as above.

Hugonin v. Basely, 13 Ves. 104. The case represented by this bill was, that the plaintiff, Mrs. Hugonin, being entitled to an estate in Jamaica, in fee simple, within three months after her return from the West Indies, being then a widow, executed a conveyance to the defendant, who was a clergyman, in fee simple, subject to the payment of an annuity of four hundred pounds, to herself for life. A letter to the solicitors, who were in possession of the title deeds, admitted by the defendant to have been written by him, but from her dictation, lamented her destitute situation by the death of her husband; and stating that providence had sent her a friend to manage her affairs to advantage, concluded with a direction to deliver up the deeds to, and to settle her accounts with the defendant.

Upon a motion for a receiver, the Lord Chancellor said he had no doubt of the jurisdiction to appoint a receiver, but did not appoint one.

The case of Stillwell v. Williams, 6 Madd. Rep. 38. The statement is, "where, upon the answer there is strong presumption against the title of the defendant impeached by the bill, the court will grant a receiver." The bill was filed to set aside a sale made by the plaintiff's ancestor, to the deviser of the defendants, on the ground of imposition and advantage taken of ignorance and distress. The facts shewed a strong case of fraud and imposition, and the vice chancellor appointed a receiver.

The case of Stillwell v. Wilkins, has this statement. "On a bill to set aside a purchase, the answer of the defendants, the devisees of the purchaser, admitting great inadequacy of price, and stating their ignorance as to other circumstances of fraud alleged, a receiver appointed." This bill was filed in 1816. Jacob's Reports, 280.

The Lord Chancellor said, in giving his opinion, " the point that struck me was, whether on a bill to impeach a sale for fraud, the court interposes so strongly before the hearing, as to take away the possession from persons holding it under the effect of deeds not yet set aside by a decree of the court; and I put it to Mr. Roupell to tell me whether he could find any such case. * * * * I am ready to admit that I do not remember any instance of a receiver being so appointed; but still the question is, whether there may not be a case where it ought to be done. If the case stated be true, and it is more than probable that it is true, the inadequacy was so monstrous, the situation of the young man, and the state of his intellect were such, that it is hardly possible to suppose that the transaction can stand, and I think, therefore, that this is a case where such an order may be made, though it is not the general habit of the court." The case is in Condensed Reports, vol. 4, 131.

In the first of the foregoing three cases, to wit: Hugonin v. Basely, the bill was filed by the vendor against the vendee, to set aside a conveyance alleged to have been obtained by imposition and fraud.

The second case was (Stillwell v. Williams,) a bill filed to set aside a sale made by the plaintiff's ancestor to the deviser of the defendant's, on the ground of imposition and advantage taken of ignorance and distress. The facts shewed a strong case of fraud and imposition, and the vice chancellor appointed a receiver. The parties here on their respective sides, represented those engaged in the original transaction, and were volunteers under them, so the case in principle is precisely like the one above, of Hugonin v. Basely.

The third and last case cited by the judge, the case of Stillwell v. Wilkins, was a bill filed to set aside a sale for fraud and imposition. There was great inadequacy of price; the bill was filed against the devisees of the purchaser; it was a case between the original parties in the contract, or volunteers under them.

The cases, then, cited by Judge Story, establish what we contend was his meaning when he said, "In cases, also, where an estate is held by a party under a title obtained by fraud, actual or constructive, a receiver will be appointed," to wit: that the principle applied to the vendor and vendee, and not to the case of ad-

*Mays v. Rose et al.*

verse titles. If a bill had been filed (and a motion for a receiver made) to set the contract of sale aside between Frederick C. Rose and Benj. F. Rose, on ground that Benj. F. had taken advantage of the ignorance, distress, &c. of Frederick C., and obtained the conveyance fraudulently in this way, then, and then only, the authorities cited by Judge Story would apply. And I do not understand the judge as intending to advance a different opinion.

The bill in the case of Stillwell v. Wilkins, Jacobs' Rep. 280, was filed as late as 1816, and we hear the lord chancellor stating his readiness to admit that he knew of no precedent for such an order as the one asked for, and inquiring of the solicitor whether he could find any such case. This certainly proves the great reluctance of the English chancellor to "interpose so strongly before the hearing as to take away the possession from persons holding it under the effects of deeds not yet set aside by a decree of the court."

The chancellor, not knowing of any precedent, seemed disposed to make one; and mark the strong ground on which he based his opinion: "If the case stated (he says) be true—and it is more than probable that it is true—the inadequacy was so monstrous, the situation of the young man, and the state of his intellect were such, that it is hardly possible to suppose that the transaction can stand."

The above was a strong case of fraud and imposition practised upon the vendor.

In Maddock's Ch. 2d vol. p. 187, top, it is said, "Nor is it usual to appoint a receiver before answer; but there are several cases where the court will, before answer, appoint a receiver upon affidavits, as in cases of fraud, combined with danger to the property, or where a defendant absconds to avoid being served with process."

The author, on the first branch of the above proposition, cites Loyd v. Passingham, 16 Vesey, 69; Vann v. Barnett, 2 Bro. C. C. 152; Hugonin v. Basely, 13 Vesey, 108; Middleton v. Dodswell, 13 Vesey, 266.

The case of Loyd v. Passingham, 16 Ves. 69, was the case of one claiming to be heir, who filed his bill impeaching a verdict in ejectment, by which the marriage of the ancestor of complainant

with Elizabeth Taylor, ancestor of defendant, was established. The ground of impeachment was the allegation of fraud and forgery in obtaining the verdict: affidavits of persons concerned in the transaction were offered. The motion was for the appointment of a receiver.

Mr. Richards and others, for the motion, contended that there were several instances of appointments of receivers upon a legal title, upon strong ground of fraud, and cited several authorities.

Sir Samuel Romilly and others contended that "this application for a receiver is perfectly new."

The lord chancellor refused the motion, under the circumstances of the case. He observed, "With regard to application for a receiver, Lord Kenyon, in the case of Vann *v.* Barnett, 2 Bro. C. C. 158, said, 'he could not have granted that motion upon the affidavits produced in support of it, but the defendant having been imprudent enough to make an affidavit in answer, the court proceeded on that.' And I (continues the chancellor) can conceive a case in which the court may so proceed. Suppose an agreement for a mortgage, by an absolute conveyance, with covenant for redemption, by a collateral instrument, the mortgagee being at the time tenant in possession, and, having obtained the conveyance, he refuses to execute the defeasance, and that, besides holding the possession, it was proved further that he meant to cut timber; can it be maintained that, as he could not, before the cause could be heard, be reduced to a mortgagee on parchment, this court would not, upon proof of such a fraud, interpose, by granting a receiver? The fraud must rise so high as almost to compel the court to do what is, I admit, a very strong act."

The attention of the chancellor to the opinion of the lord chancellor at length, in the foregoing case, is invited, by which the great reluctance in granting the motion for a receiver, in cases similar to the one above, will be seen. He speaks of their being granted, and a receiver appointed, only in extreme cases of fraud and imposition—imposition, of course, practised on the grantor; not a case analogous to the one under consideration.

There is a notice of the case of Loyd *v.* Passingham in 3 Merivale, 696. The statement of the case is, "The defendants being in possession under a legal title, the motion was (made for

a receiver) refused upon the ground, that although cases of fraud, combined with danger to the property, might arise as to which a court of equity would interpose upon affidavits, yet the court always reluctantly interferes against the legal title, and only in a case of fraud, clearly proved, and of imminent danger if the intermediate possession should not be taken under the care of the court. "And now" continues the report, "the motion was again renewed upon the effect of the evidence taken in the cause, and the lord chancellor refused to hear it before hearing the cause."

The next case cited by Maddocks in his text, that the court will, before answer, "appoint a receiver upon affidavits, as in cases of fraud, combined with danger to the property," is the case of Vann *v.* Barnett, 2 Bro. C. C. 158. That case is simply this: "Mr. Scott moved, on the part of the plaintiff, for an injunction to restrain defendant, to whom the plaintiff's estates had been conveyed in trust to pay debts by sale, &c. from selling, and that a receiver might be appointed, upon very strong affidavits; the defendant's answer was not come in, but he having made an affidavit in answer to those on the part of the plaintiff, his honor took that to amount to an appearance, and granted the motion."

The case of Hugonin *v.* Basely, 13 Ves. 105, was the case also cited by judge Story, which has already been commented on.

The case of Middleton *v.* Dodswell, 13 Ves. 266, was a case against an executor, the co-executor consenting to the order. As to the power and practice of the court in appointing receivers, upon proper cases, against trustees and administrators and executors who are trustees, no one doubts.

Upon a review, then, of the cases referred to by Maddocks, it seems that, as far as they have any analogy whatever to the case before the court, they were cases where the title had been obtained by fraud and imposition on those from whom the title was obtained. Upon a bill filed by the heir to set aside a will obtained by fraud and imposition, upon strong ground shown, a receiver will be appointed; but the present is not a case of that character.

Counsel have seen references to other cases in the English books, in which receivers have been appointed, but have not been able to find the authorities. They conclude, however, from the

discussion which the cases already referred to underwent, by the bar and court, that no authorities can be produced carrying the settled principle of appointing receivers further than it was recognized and in some degree established by the decision in those cases. The counsel have examined to some extent the American authorities, but have found no case bearing directly upon the present question.

As noticed before, Story, at page 140 of the same vol. says, "In regard to legal property, it is obvious that where the right of enjoyment is present, the legal remedies will generally be found sufficient for the protection and vindication of that right." Now if the right of complainant is superior to that of Benjamin F. Rose, the grantee, what obstacle is there in the way of his legal remedy? Can he not institute his action of ejectment immediately against the tenants, who are bound, both by law and good faith to hold possession for their landlord, and refuse to attorn to another.

Can it be said that if the conveyance to Benjamin Rose be fraudulent, and they rented *bona fide*, like a *bona fide* purchaser of the estate, they hold it during their term stript of the fraud? We conceive not. The tenant holds for the landlord; his possession is the possession of the landlord; their interest *quo ad hoc* is inseparable; and if the landlord is not entitled to possession the tenant cannot be in a better condition; the stream cannot rise higher than the source whence it flows.

We do not question the right of complainant in the mean time to apply to the court of chancery upon the subject of the alleged fraudulent conveyance. Our argument is, that neither necessity, principle, nor precedent, call for the appointment of a receiver; and if it can be done here, so can it be done in every case where an action of ejectment has been instituted, and a bill filed showing strong grounds to believe a recovery must eventually be obtained·

JOHN B. FORESTER, *contra.*

A receiver will not be appointed against the legal title, except, in the language of Lord Eldon, 16 Ves. 70, where the court are morally sure that on the hearing the party would be turned out of possession, and that the intermediate rents and profits are in danger. The court in that case, in reviewing the case of Van *v.* Bar-

nett, 2 Bro. C. C. 158, says, that the receiver was not appointed in that case on the affidavits produced in support of the motion, but on the affidavit of the defendant. 16 Vesey, 65, marginal page, referred in 13 Ves. 105. In England, all the cases are those of contract between the parties, or abused trust and confidence as an attorney, &c. or contests between the heirs; and in the only case I find of the latter kind, the receiver was refused, and in most of the cases the court relies much on the answers of defendant. In Mordant v. Hooper, Ambl. 311, the case is so imperfectly reported that none of the facts appear, but the answer of the defendant was in, and the court declares the general principle that strong evidence of title must be shown, and that there is danger of the rents being lost. 3 Am. Eq. Dig. 455, sec. 19, lays down the same principle, except it is there stated that the title must be acknowledged, or strong presumption of title, and where the property itself or the rents and profits are in danger of being materially injured or totally lost. Tur. and Russ. 422.

The American authorities do not change the rule. I have been unable to find any case where a purchaser at execution sales was entitled to the privilege of a receiver.

In this case all the allegation in the bill that bears on this point is, that F. C. Rose is insolvent, and he is fearful he will get the rents and profits in his possession, and by that means endanger them; but Benjamin Rose has the legal title, and is responsible alone for rents, (if any one is,) and his solvency is not denied. The affidavits produced in support of the bill are, that Benjamin Rose was a clerk with them for F. C. Rose; that while he was clerk F. C. furnished him with the means of support for his services, and that they never saw him have large sums of money. I suppose he would have been very indiscreet to tell them he had it. It would have been such an act of indiscretion that no prudent man would have been guilty of it. In all cases, notice must be given to the party, except he absconds to avoid the service of process; no reason given, either in the bill or affidavits why Benjamin Rose has not been notified of this motion. Without this is done, or proof to show that he has absconded to avoid the service of process, the motion cannot be entertained. 1 Ves. and Beas. 75; 2 Mad. C. 188.

It is not shown there has been any waste, or that the rents and profits are in danger. All the above cited cases require this to be done.

The CHANCELLOR.

An application for the appointment of a receiver, is one which is addressed to the sound discretion of the court, to be exercised as an auxiliary to the attainment of the ends of justice. It is one of the modes in which the preventive justice of a court of equity is administered. The great object is to secure the property or thing in controversy, so that it may be subjected to such order or decree as the court may make in the particular case. It is intended equally for the security of both plaintiff and defendant. The possession of the receiver is not adverse to, or in hostility to the rights of the defendant; that possession is the possession of the court, held equally for the greater safety of all the parties concerned. 1 John. Ch. Rep. 58. A reference to the various decisions upon motions for the appointment of receivers, shows that each case has been made to depend upon its own peculiar features, and throws but little light upon any new case, except so far as they establish the general principles, which should govern the court in the exercise of its discretion upon these motions. These principles are: That the plaintiff must show, first, either that he has a clear right to the property itself; or that he has some lien upon it; or that the property constitutes a special fund to which he has a right to resort, for the satisfaction of his claim. And secondly, that the possession of the property by the defendant was obtained by fraud; or that the property itself, or the income arising from it, is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant. These are believed to be the general rules governing all applications of this kind. Orphans Asylum *v.* McCartee, 1 Hopkins Rep. 429; Hugonin *v.* Basely, 13 Ves. 105; Loyd *v.* Passingham, 16 Ves. 69. The question here is, does the plaintiff's case come within the application of the principles referred to.

The bill charges that the defendant, F. C. Rose, was seized of certain town lots in the city of Jackson, with a quantity of merchandise and other property, and that being largely indebted, and

wishing to delay and defraud his creditors, he conveyed to his brother Benjamin Rose, the other defendant, by deed of date the 5th of November, 1839, the whole of said property for the nominal sum of one thousand nine hundred dollars. That in order to more effectually conceal the fraud intended, said F. C. Rose, a short time thereafter, took from said Benjamin Rose a power of attorney, authorising him to transact all his business, and to use, sell or dispose of said property at the will and pleasure of said F. C. Rose; who pretending to act under said power of attorney, controuled and enjoyed the proceeds of said property, bought and sold various articles in his line as a merchant, and carried on the whole business for his own benefit, without accounting to his brother therefor. That Benjamin Rose was a foreigner, a young man just then come to the country, without property, and dependant mainly upon the bounty and kindness of F. C. Rose for his support; that he was wholly unable to pay, and never did pay any part of said nominal sum of money. That shortly after the making of said deed, various judgments were obtained against said F. C. Rose, at the instance of pre-existing creditors, upon which judgments, executions were issued and levied upon said town lots, and afterwards regularly sold, at which sale the complainant became the purchaser. That there are several tenements on said lots, which have been rented out in part by said F. C. Rose, and in part occupied by him. The bill prays for an injunction against the defendants, as to the receipt of rents, for the appointment of a receiver, and for general relief.

I entertain no doubt that a purchaser of real estate at a sheriff's sale, may come into this court for the purpose of setting aside a deed of the property which had been made to defraud the judgment creditor. The purchaser in such case succeeds to all the rights which the judgment creditor had against such fraudulent deed. Feakes v. Brown, 2 Blackf. 295, and the court will extend to him the same remedies and measure of relief, that would have been afforded to the judgment creditor himself.

Upon a creditor's bill to reach the property of his insolvent debtor, nothing is more usual than to appoint a receiver to collect and preserve the property pending the litigation. Osborn et al. v. Huger, Paige Ch. 342. In Bloodgood v. Clark, 4 Paige Ch. 575,

Chancellor Walworth says: " In these cases of creditor's bills, where the return of execution unsatisfied pre-supposes that the property of the defendant, if any he has, will be misapplied, it seems to be almost a matter of course to appoint a receiver." I take it to be clear, that the creditors of Rose, under whose judgments the complainant purchased, could have come into this court, to set aside the deed in question; and that upon allegations like those in the complainant's bill, they would have been entitled to ask for the appointment of a receiver; if so, then from the view I have taken of the authorities, the plaintiff's right to do so is equally clear. I think, then, whether we test this application by its analogy to adjudged cases, or by reference to the general principles to which I have adverted, its claim to success is equally clear. The bill shows the complainant's right to the lots in question, by his purchase at sheriff's sale; that the possession of them by the defendant, Benjamin Rose, was obtained by fraud, and that the rents and profits of the property are in danger of being lost to the complainant, by reason of the fraud, insolvency, or irresponsibility of the defendants; thus embodying all the elements necessary to the success of the motion.

It is worthy of remark, that none of these allegations are attempted to be met, and denied, by either answers or affidavits from the defendants, although one of them at least was apprised of the pendency of this motion by special notice. It is said by the defendant's counsel, that the motion should not be entertained, because no notice appears to have been given to Benjamin Rose. It is no doubt the settled practice, not to entertain a motion for the appointment of a receiver, until the defendant has had notice, if it be practicable to give one; and I should have held this objection as fatal, if it were not expressly stated in the bill that the defendant F. C. Rose, upon whom notice was served, was the authorised agent of Benjamin Rose, managing and controling the very property over which a receiver is sought to be placed. This notice I think sufficient. Notice to an agent, is notice to the principal.

The motion for an injunction and for a receiver must be sustained.