J. A. REEVES AND WIFE V. ARCHIBALD BASS.

1. Though a deed be upon its face an absolute conveyance of the fee, parol evidence is admissible to prove that it was intended at the time of its execution as a conveyance in trust that the grantor should enjoy the exclusive use and control of the property during his life, and that on his death it should operate as a testamentary devise to the grantee.

2. But the intent of the parties must be clearly established to authorize a decree curtailing the interest conveyed, at variance with the terms of the deed.

3. Though a deed absolute on its face cannot be shown to have been made upon trust by evidence of one witness to the declarations of the trustee, yet it may be by the positive evidence of the vendor when corroborated by circumstances connected with the execution and delivery of the deed.

APPEAL from Victoria. Tried below before the Hon. T. C. Barden.

Archibald Bass, on the twenty-third of December, 1867, executed a deed to his daughter Margaret, the wife of

John A. Reeves, by which he conveyed to her all his stock of cattle and horses, and his farm, including all the land he owned. The consideration expressed in the deed was $4500 cash in hand paid for the stock, and $2500 for the land. On the same day Reeves and wife executed to Bass a receipt for $7000, received by the conveyance of this property as payment in full for her interest in the estate of her deceased mother and brothers. At the date of this transaction Bass was a stockraiser and farmer, about fifty years old, and a widower, having no living legitimate child but his daughter Margaret. The transcript shows that he was an illiterate man. Soon after executing the deed, on the thirteenth of February, 1868, Bass by deed of gift donated to his daughter Margaret all his household and kitchen furniture; and on the same day conveyed by bill of sale to his son-in-law Reeves his buggy and harness, corn, bacon and hogs. The expressed consideration for the last conveyance was, that Reeves was to pay certain debts for Bass of small amount. These conveyances embraced all the property of every kind that Bass owned except his wearing apparel. The testimony disclosed that the value of the property thus conveyed was about $15,000.

Soon after the deed of December 23, 1867, was made, Reeves and wife went to live on the land thus conveyed. Bass continued to live there also. Bass and Reeves appear to have been both engaged in cultivating the land and managing the stock; but whether Bass was in possession and control of everything, and Reeves and wife lived with him upon invitation, or whether Reeves and wife were in possession and control and Bass lived there by sufferance, were questions of fact contested, about which the evidence was conflicting.

Reeves and wife remained there till some time in the summer of 1869, when he moved his wife to his mother's,

where she was confined. While she was there a quarrel
arose between Bass and Reeves. Bass denied the claim
Reeves set up to the ownership of the property, and
would not let him return to the place ; and Reeves and
wife brought this suit—trespass to try title—for the
farm.

Bass answered specially that the deed of December 23,
1867, was not made for the consideration and purposes
expressed upon its face, but was made upon the express
understanding and trust that it should not operate to de-
prive him of the possession and control of the property
while he lived; but that, on the contrary, so long as he
lived he was to possess and enjoy the farm as he had al-
ways done, and was to control and manage the stock and
dispose of the same as he had theretofore done, and espe-
cially to apply them, so far as necessary, to the payment
of his debts ; and that at his death the farm and remain-
ing stock should belong to his daughter Maggie ; that
the deed was not made upon any consideration of debt
due to Maggie whatever, but was made because he was
afraid of trouble with a negro woman, who claimed that
her children (who, she claimed, were also Bass's children)
were entitled to a share of the defendant's property, while
defendant had long since determined that all his property
should go to his daughter Maggie at his death ; and de-
fendant being afraid the Freedman's Bureau might inter-
fere to compel him to divide his property with this woman
or her children, he made the deed to secure the property
to Maggie at his death, and made it upon the understand-
ing and trust already stated. That after this deed was
made Reeves and wife came to live with him upon his in-
vitation, and not as owners of the property.

By further amendment of his answer Bass prayed that
the deed of December 23, 1867, might by decree of the
court be made to conform to the true intent of the parties,

so as to establish and confirm his right to enjoy and control the property during his life, as well as the right of said Maggie Reeves to possess and enjoy the same after his death.

The testimony of Bass as a witness fully sustained the allegations in his answer. Reeves did not appear in the case as a witness.

The evidence disclosed that the wife of Reeves had been carefully educated from home by her father, and Reeves was unwilling, after marriage, to reside with him on the farm while a negro woman who claimed to be the mother of illegitimate children by Bass remained there; that Bass was troubled by this woman, who claimed the farm for her children; that Bass first himself suggested to Reeves the conveyance, as a protection against this trouble; that he was assured by Reeves that the trust reposed in him would not be betrayed; that no money was paid. The testimony was conflicting as to the value of the community property inherited by Mrs. Reeves from her mother; some of the witnesses regarded it of little value. There was nothing in the testimony to disclose that Mrs. Reeves was consulted by her father in regard to the conveyances. On the contrary, Bass testified that he never conversed with her on the subject.

The testimony of Bass was objected to by plaintiff when he was introduced to prove the allegations in his answer, for the following, among other causes, viz.: "3. Because parol testimony is inadmissible to contradict or vary a written instrument in the absence of an allegation of fraud, accident or mistake." The action of the court in overruling the objection was assigned for error.

The court instructed the jury at length, leaving them from the evidence to ascertain and by their verdict give effect to the real intention and understanding of the parties at the time the deed was executed.

The following verdict was rendered by the jury :

"We, the jury, find that the deed of December 23, 1867, from the defendant, A. Bass, to Margaret Reeves, was not intended to vest in said Margaret the immediate possession and ownership of the property conveyed, but to vest said property in her to take effect in possession at the death of said Bass. We therefore find for defendant."

A decree was rendered accordingly, and a new trial being refused Reeves and wife appealed.

*Phillips, Lackey & Stayton,* for appellants. — Under the facts in this case, with the pleadings of the defendant as they were, could parol testimony be received to vary, or in any manner change, the legal effect of the conveyance under which the plaintiffs claim?

"Parol cotemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." This rule of evidence is operative in this State as fully as it ever was in England; and in all of the courts of the different States of the Union, whether of law or equity jurisdiction, the full force and effect of the rule has been and still is recognized. (1 Texas, 373 ; 8 Texas, 136 ; 2 Texas, 454 ; 18 Texas, 248 ; 25 Texas, 87 and 165 ; 24 Texas, 650 and 422 ; 27 Texas, 123 ; 28 Texas, 553 ; 1 Greenleaf on Evidence, Sec. 275 ; 3 Greenleaf on Ev., Sec. 336 ; 2 Phillips on Evidence (4th Am. Ed., Cowen, Hill & Edwards' Notes) pages 665, 666, note 494, and authorities therein cited.)

The rule is believed to be without an exception; for if the elements of fraud, accident or mistake exist in regard to the written instrument, as between the parties, it cannot be said to be a valid written instrument. The mutual assent of the parties to the language and subject matter of the contract precedes the delivery of the evi-

dence of the contract. Upon the delivery of the instrument with intent that the same shall evidence the will of the contracting parties, the contract as between the parties is complete, and it then, if a valid written instrument, ought, and in reason must, be held, if unambiguous in its language, to express fully and finally the intention of the contracting parties in regard to the subject matter of the contract, and this view is as fully sustained by authority as by reason. (See Lord Irnham v. Child, 1 Brown's Chancery Cases, 92; Portmore v. Morris, 2 Brown's Chancery Cases, 219; The Marquis of Townshend v. Stangroom, 6 Vesey, 328; The London Railway Co. v. Winter, 1 Craig & Phillips, 57; Chitwood v. Brittan, 1 Green's Chancery, 438; Chaunay v. Crutchfield, 2 Iredell's Equity, 148; Richardson v. Thompson, 1 Humphreys, 151; Westbrook v. Harbeson, 1 McCord's Ch., 112; Dwight v. Pomeroy, 17 Mass., 308; Robeson v. Harwell, 6 Georgia, 589; Parkhurst v. Van Courtland, 1 Johns. Ch., 273, 282; Movan v. Hays, Id., 338, 343; Stephens v. Cooper, Id., 425, 429; King v. Baldwin, 2 Johns. Ch., 74; Wilkinson v. Wilkinson, 2 Devereux' Equity, 376; Ratcliff v. Allison, 3 Randolph, 537; McMahon v. Spangler, 4 Randolph, 51; Jarvis v. Palmer, 11 Paige, 460; Lyon v. Richardson, 1 Johnson's Ch., 60; Schmidt v. Labutut, 1 Speers' Equity, 421; Dow v. Kerr, Id., 113; Greenwood v. Eldridge's Adm., 1 Green's Ch., 145; Wheaton v. Wheaton, 9 Conn., 96.)

We are aware of the great number of decisions which seem to be in conflict with these views, but if we examine the cases we will perhaps find in every one that the instrument permitted to be altered or contradicted by cotemporaneous parol testimony was wanting in some one or more of the essential elements of a valid written instrument, such as upon the face of the paper it appeared to be. In such cases the want of these essential

elements may be shown by parol proof of facts from which the court will, even as between the parties, declare the instrument invalid, but never upon parol proof of cotemporaneous language different from that contained in the instrument. (1 Greenleaf on Ev., Sections 276, 277.)

There are three classes of cases which have been thought by some to authorize the announcement of a general rule "that parol evidence is admissible to prove that a deed or instrument, absolute upon its face, was executed and delivered upon certain trusts not reduced to writing, and which the grantee promised to perform, and that the same may be established."

These classes simply show: First, that as between third parties and a party to a written instrument, parol testimony may be received even to contradict a deed, and in fact a party to such instrument may contradict the recitals thereof by such testimony in a suit with one not a party thereto, so far as the rule of evidence affects the question, unless there be an estoppel *in pais*. (2 Phillips on Evidence, C. H. & E.'s Notes, 487.) Second, that upon proof of a want of consideration, the law will raise a trust in favor of the grantor in ordinary cases. Third, that unless the contract be invalid for want of some essential element, no parol testimony of cotemporaneous parol agreements will be received—that if it be admitted to be valid to convey any estate, it must have its full legal effect. Fourth, that under a recital of a mere nominal consideration, the real consideration may be shown by parol testimony.

We are not aware of any case in which this court has ever held that as between the parties to a valid written instrument, it was admissible to introduce parol testimony to contradict or vary such instrument for any purpose whatever. We will briefly refer to the cases relied upon by appellee to show that a trust may be shown to

exist by parol testimony in contradiction to the plain im-
port of the language of a valid written instrument, even
between the parties to such instrument. The case of
Jones v. Fulcrod was not a case between the parties to
the deed, nor did the parol testimony conflict with the
deed, but only shows that a trust in lands, as between
the vendee and a person not a party to the deed, might
be proved by parol testimony. Carter v. Carter, 5 Texas,
99, was simply a mortgage to secure loan of money.
Mead v. Randolph, 8 Texas, 498, was a suit for specific
performance upon a bond for title, and there was a plea
and proof of want of consideration to support the same,
nor did the bond show even a nominal consideration, so
far as appears from the statement of facts; parol testi-
mony in that case was admitted, and witness stated the
conversation of the parties to the instrument—all of
which tended to support the plea of failure of considera-
tion. Miller v. Thatcher, 9 Texas, 482, was a case in
which one surety claimed an interest in property con-
veyed by their principal to a co-surety for the benefit of
both, and as indemnity; it was not a suit between the
parties to the deed by which the property was conveyed;
and parol testimony was permitted for the purpose of
showing the trust in favor of the co-surety, and for that
purpose only. In McClenny v. Floyd the conveyance
was made without consideration and with intent to de-
fraud creditors.

Neil v. Keese, 13 Texas, 188, was not a suit between
parties to the deed, but between a stranger thereto and
the grantee therein, in which the stranger claimed and
was permitted to prove that the land was paid for with
the money of himself and the grantee, under an agree-
ment to divide the property: a mere resulting trust,
which was proved by parol testimony. Bailey v. Harris,
19 Texas, 110, was a mortgage. Money had been loaned
    40.

by the grantee to the claimant, who was not a party to the deed, to enable him to pay for the property. The deed was taken in the name of the lender to secure the repayment of the purchase money. At most it was but an implied trust, which parol testimony was introduced to establish by showing the loan. Cuney v. Duprey, 21 Texas, 220, was a case of mortgage to secure money advanced.

Leaky v. Gunter, 25 Texas, 403, was not a suit between parties to the deed, but against the grantee by one who claimed that the purchase of the land was made under an agreement that he and the grantee should purchase and divide the land, the purchase money having been paid by the claimant and the grantee ; parol evidence was admitted to show the trust by proof of the payment.

Dunham v. Chatham, 21 Texas, 246, was a suit by a wife, wherein it was claimed that a deed of gift made nominally to the husband and wife by the father of the wife was intended to vest the property exclusively in the daughter; parol testimony was admitted to show what the intention was. The conveyance was not upon valuable consideration, nor was the suit between the grantor and grantee; the gift being by a father to a daughter and her husband, the legal presumption was that the father intended an advancement to the daughter, and in support of this presumption of law parol testimony was admissible (16 Texas, 321; 3 Greenleaf on Evidence, Sec. 366); besides the parol testimony showed that the name of the husband was inserted by mistake. Smith v. Strahan, 16 Texas, 320, was the common case of a resulting trust, and the suit was not between parties to the deed. Higgins v. Johnson, 20 Texas, 393, only shows that *prima facie* presumptions may be rebutted by parol testimony. Millican v. Millican, 24 Texas, 440, was a case where the entire quantity of land to which the father and sons were

entitled as colonists was conveyed by one grant to the father in trust for the sons, to the extent of the land to which they were entitled; parol testimony was admitted to show the resulting trust; the sons were not parties to the grant from the government, except in interest. Vandever v. Freeman, 20 Texas, 336, was a conveyance without consideration; parol testimony was admitted to show that fact, and thereby raise implied trust. Grooms v. Rust, 27 Texas, 231, was a case not between the parties to the deed; parol testimony was introduced to show that the donee received the deed with the agreement between him and the donor that the plaintiff should have the use of a negro during his life.

We respectfully submit that under the facts in this case the conveyance from the defendant to the plaintiff cannot be in any manner impaired by such testimony. We know of no case in which it has ever been determined that parol testimony may be admitted to alter or contradict in any degree the legal import of a deed executed by one party to the suit to the other, conveying by its terms title to the property in controversy, and which at the time it was executed was unaffected by anything that would render it invalid, and which upon its face shows a valuable consideration, not merely nominal, but real, and which it is not denied was intended by the parties thereto to pass and which did pass some estate in lands, even though one of the parties to such suit pleads that the estate which the parties intended to convey was a less estate than the deed upon its face purports to pass. Especially is this true when it is only proposed by such testimony to prove the language of a cotemporaneous parol agreement between the parties to such deed. That the deed and receipt in this case constituted a valid written contract is not denied, but is expressly affirmed by the pleadings of the defendant. That there was any fraud on the part of

the grantee at the time the contract was executed is not pretended.

Parol testimony for the purpose of showing that the parties intended to convey a different estate from that conveyed by the legal construction of the deed, cannot be received. (Avery v. Chappel, 6 Conn., 270; Chappel v. Avery, Id., 31; Farrer v. Ayres, 5 Pickering, 404, 409; Colden v. Cornell, 3 Johnson's Cases, 174; Pooser v. Taylor, 1 McCord's Ch. R., 18; Jackson *ex dem.* Bonnell v. Foster, 12 Johnson, 488; Comstock v. Van Deusen, 5 Pickering, 163; Sinclair v. Jackson *ex dem.* Field, 8 Cowen, 543; Spencer v. Tilden, 5 Cowen, 144; Phillips v. Kerner, 1 Littell, 329; George v. Harris, 4 New Hampshire, 533; McCreary v. McCreary, 5 Gill & Johns., 147, 157; Preston v. Merceau, 2 W. Blackstone, 1249; Moses v. Anrell, 3 Williams, 275; Rich v. Jackson, 4 Brown's Ch. Ca., 515; Powell v. Edmonds, 12 East, 61; Mersly v. Runnoldson, 2 Ha., 576; 3 Ha., 509; 2 Phil. on Ev., 4 American Ed., Cowen, Hill & Edwards' Notes, 638, note 486, and authorities cited; Id., pp. 644, 645, note 487, and authorities therein cited; Id., p. 652, note 489, pp. 666, 667, 671, note 494, with authorities therein cited; Rockmore v. Davenport, 14 Texas, 604; Walker v. Renfro, 26 Texas, 143; Reid v. Allen, 18 Texas, 248; Self v. King, 28 Texas, 553; LaFarge v. Rickert, 5 Wend., 187.

The law controlling the operation of a contract becomes a part of it. (See also Somerville v. Stephenson, 3 Stuart, 271, *et seq.;* Duprey v. Gray, 1 Ala., 357; Wesson v. Carroll, 1 Ala., 251; Hightower v. Joy, 2 Porter, 308, 311, 312; Adams v. Beard, 1 Blackf., 191; Wright v. Weakly, 2 Watts, 89; 3 Ind., 381; 8 Ind., 417; 15 Ind., 117.) And in this State the rule of construction as to the estate conveyed has been fully determined by legislative enactment (Paschal's Digest, Art. 999), whereby it is declared that every conveyance of land shall be deemed the con-

veyance of a fee simple title, unless the parties, in the face of the deed, limit the estate conveyed by express words, or unless, by applying the settled legal rules of construction to the instrument, it appears that a different estate was conveyed.

So long as the defendant admits that the deed is to be operative at all, it must be carried out according to its legal effect. (6 Georgia, 611; 5 Georgia, 344.)

2. If admissible, is the parol testimony given in this case sufficient to sustain the verdict and decree? The rule seems to be fully established that in those cases in which the law permits a trust to be ingrafted upon a deed absolute on its face, in favor of any party, by parol testimony, the same will only be done where the proof of facts (not of parol cotemporaneous agreements or under-standings) is full and satisfactory, not only to the jury but to the court; that the naked oath of one witness, unsupported by strongly corroborating proof, will not be deemed sufficient to authorize a decree establishing and enforcing such trust. (See Miller v. Thatcher, 9 Texas, 485; Neil v. Keese, 5 Texas, 23; Hall v. Layton, 16 Texas, 275, *et seq.;* Boyd v. McLean, 1 Johns. Ch., 590; Cuney v. Dupree, 21 Texas, 219, 220; 10 Vesey, 517.)

The principal testimony, if not all thereof which tended to sustain the allegations of the answer, was the testimony given by defendant himself.

Where the consideration for a deed made by a third party to a wife or child is paid by the husband or father, the law implies no trust against the wife or child, but, upon the contrary, presumes an advancement. (2 Story's Eq., 1202, 1204; Smith v. Strahan, 16 Texas, 321, 323; Higgins v. Johnson, 20 Texas, 393.) How much stronger is that presumption when the deed is made directly to the child by the father? (1 Leading Cases in Equity, 196; 16 Texas, 323, 324.) Inadequacy of consideration is neither

a ground for annulling a contract in equity, nor for refus-
ing a recovery upon it at law. (Leading Cases in Equity,
Vol. 2, Part I., p. 547, and authorities.) At any rate, the
release of her claim by Mrs. Reeves—the amount of the
same being uncertain—was consideration sufficient to de-
stroy an implied trust, if the law otherwise would pre-
sume the same.

*Glass & Callender*, for appellee, argued in favor of the
admissibility of parol evidence to show that the deed
from Bass, though absolute on its face, was executed on
trusts not reduced to writing, and cited Mead v. Ran-
dolph, 8 Texas, 196 ; McClenny v. Floyd, 10 Texas, 163 ;
Millican v. Millican, 24 Texas, 441, 444 ; Dunham v.
Chatham, 21 Texas, 245 ; Leaky v. Gunter, 25 Texas,
403.

They also argued that Miller v. Thatcher and Leach v.
Leach (10 Ves.) did not prevent the establishment of such
a trust as Bass claimed to exist by the positive testimony
of one witness who knew the fact, but that those cases
went no further than to hold that the unassisted oath of
a single witness to the mere declarations of the trustee
admitting the trust would not establish it.

OGDEN, P. J.—Counsel for both appellants and appel-
lee agree that there are but two questions to be decided
by this court, in order to settle the whole matter in dis-
pute as presented in this record.

First, was parol testimony admissible to prove that the
deed or instrument set out as the foundation of this ac-
tion, though absolute upon its face, was executed for the
purpose of establishing a trust in favor of the grantee ?
The common law rule that parol cotemporaneous evidence
is inadmissible to contradict or vary the terms of a valid
written instrument, is so generally recognized and thor-

oughly established in this country that we deem it unnecessary to refer to authorities in its support.

When the language is clear and unambiguous, that instrument must be its own interpreter, and must be regarded as containing the most definite, settled and final intent of the parties thereto, which may not be varied by testimony of a less degree of credulity. But courts of equity have enlarged this rule of the common law, in particular instances, under the general rule that courts of equity are clothed with a corrective and remedial power in all cases of accident, mistake or fraud. And this rule, says Justice Story, stands independent of and not controlled by the statute of frauds. (1 Story's Eq. Jur., 155.)

It is said by the same learned author, that "It is difficult to reconcile this doctrine with the rule of evidence of the common law, which studiously excludes the admission of parol evidence to vary or control written contracts" (Eq. Jur., p. 154); but he says that this rule of equity is as firmly established as the common law rule, and that where they conflict equity must prevail.

This rule has often been recognized and repeated as an established rule of the law of this State. In Mead v. Randolph, 8 Texas, 196, it is said: "It seems, then, now to be beyond question, that parol evidence is admissible to prove that a deed or instrument, absolute upon its face, was executed and delivered upon certain trusts not reduced to writing, and which the grantee promised to perform." The same rule was held as settled in 3 Texas, 1; 5 Texas, 93; 21 Texas, 245; 25 Texas, 403; and in many other cases decided by this court. This equitable rule has been recognized by this court in cases of accident, mistake or fraud, and where great injustice might arise, without this power in the courts to inquire into by parol and enforce the original intent of the parties.

In Mead v. Randolph, the doctrine announced by the

Supreme Court of Alabama, that "though there be no fraud in the execution of the deed, yet if it be afterwards converted to a fraudulent purpose, or the one wholly different from that intended by the parties at the time of its execution, equity ought to interpose and prevent such an improper use, and establish the trust for which the deed was executed," was clearly approved and adopted by this court, and we think this a reiteration of a well defined and clearly established rule of equity, which we are not at liberty to disregard.

We are clearly of the opinion that the rules referred to, as established by former decisions of this court, must decide the first question presented adversely to the appellants. The appellee clearly sets up the fact, that though the deed in controversy is absolute upon its face, yet at the time of the execution of the same it was the intent and purpose of all the parties thereto that it should operate a conveyance in trust for the exclusive benefit of the grantor during his life, and at his death the same should operate as a testamentary devise to his daughter; that, in fact, no consideration passed between the parties, and none existed excepting the love and affection he bore for his daughter, and the wish to place his property beyond the reach of a certain party whom he feared might institute proceedings against him. The intent of the parties at the execution of the instrument is clearly set out in the answer, as well as the charge that the plaintiff, in disregard and violation of that intent, had fraudulently set up the claim that the instrument was intended as an absolute present deed, to take effect from the date of its execution.

We think the answer sets up a sufficient equity as against the plaintiffs to entitle the defendant to be heard by his evidence, and that therefore the answer was not obnoxious to the exceptions, on the ground stated; and

for the same reasons, the objection raised to the introduction of the evidence on that ground was not well taken.

Having decided that the defendant's pleadings were sufficient to warrant the judgment of the lower court, the only remaining question contended for by the appellants which we deem necessary to notice in this opinion is in regard to the sufficiency of the evidence to sustain the judgment. And here it may be proper to remark, that in all cases where parol evidence is admissible to vary a written instrument, that evidence is permitted in order to establish the *intent* of the parties, and it is not important to establish that intent by proof of facts or surrounding circumstances, for it may not unfrequently occur that there are no facts or circumstances which would establish that intent. The rule is, that the intent and purpose of the parties must be clearly established in order to authorize a court of equity to interfere to vary or change a written instrument. And, upon reason and authority, it is immaterial whether that intent be established by proof of the conversation of the parties at the time of the execution of the instrument, or proof of facts or circumstances.

We willingly concede the doctrine announced by Sir William Grant, in Leach v. Leach, 10 Vesey, that the unassisted oath of a single witness to the mere declarations of the supposed trustee is not sufficient to establish the trust. But in this case there is the proof of the whole contract between all the parties, and the declarations of all, together with proof of the facts and surrounding circumstances connected with the execution and delivery of the writing under consideration, and all the facts which subsequently arose, tending to prove the truth of the defense as set up below. Some of these facts were proven, not by one but by several witnesses, and were all before the court and jury.

The facts in regard to the indebtedness of appellee to

his daughter, the pretended consideration for the deed, the facts in regard to the possession and control of the property conveyed after the execution of the deed, were all before the court. But, above all, the fact that by this and other instruments executed about the same time appellant conveyed to his daughter and her husband not only his home, but all it contained, and the last visible piece of property he owned, amounting to fifteen thousand dollars in value, and thereby made himself, in his declining years, a houseless, homeless beggar, is a pretty strong circumstance to establish either the truth of the allegations of his answer, or the fact of his insanity or imbecility.

All the facts and surrounding circumstances connected with the execution of the instrument under consideration were before the court and jury, as well as the conversation and agreement of the parties at the time of the execution of the same, and by that court and jury have been determined in favor of the appellee; and we are not inclined to disturb that determination, especially in favor of a daughter who is attempting, without any established consideration for the claim she sets up, to turn her old father out of his home, where he has lived and nursed her from her infancy.

The judgment of the District Court is therefore affirmed.

AFFIRMED.