## A. LOTT, JR., v. FRANCES KAISER ET AL.

(Case No. 5203.)

1. ADVANCEMENT — CONSTRUCTION OF DEEDS.— The law presumes property conveyed by deed from the parent to the child for an expressed consideration of natural love and affection, to take effect *in presenti*, to be a gift by way of advancement. Like any other deed, its language is conclusively presumed, when unambiguous, and in the absence of accident, mistake or fraud, to evidence the intention of the grantor.

2. ACCIDENT — MISTAKE — EVIDENCE.— One who makes such a deed to his minor children, knowing at the time its contents and effect, cannot by parol evidence show that he intended it to take effect at his death; that he signed it with the intention of remaining in possession; and that the only object in making it was to protect the property conveyed to the minor grantees against the claims of his wife if he should die. Such a claim of mistake or accident in its execution cannot avail. Its execution was not an accident; for the accident which will relieve, in such a case, must be an unknown and unexpected event occurring externally to the grantor, and of which his own agency was not the proximate cause. Nor could it be regarded as a mistake, for the mistake which in equity will relieve must be something induced by ignorance, misapprehension or misunderstanding of the truth, but without negligence, and resulting in injury to him who sets it up. The maker of the deed, knowing both its contents and legal effect, cannot, in the absence of fraud, avoid its effect by showing by parol that he intended it to convey a different estate.

3. EQUITY — MISTAKE.— Equity will relieve when the legal effect of a transaction is misunderstood, if the want of proper understanding of its effect was produced by the misleading statements of the other party to the contract. So here, if the grantor had been induced by the grantees to omit from the deed a clause showing that it was to take effect only after his death, and that his continued possession, and the parol evidence of the attorney who drew the deed, would have the same effect to protect him in possession during his life that the omitted clause would have had, then the grantee would not be permitted to take advantage of the grantor's failure to insert the clause.

4. EQUITY.— Equity, it seems, will also relieve on the ground of fraud, when between parties to a conveyance, absolute in its terms, there was an agreement that the grantees would hold the property conveyed in trust for the grantor during his life,— the fraud consisting in the violated promise, and the presumption that but for such promise the grantor would have inserted in the deed the substance of the parol agreement.

5. EQUITY — DONATION.— As between a donor and one not sustaining to him any fiduciary or confidential relation, equity will not set aside a voluntary deed, however improvident its terms may be, if free from the imputation of fraud or undue influence, and if it was freely executed by the donor, with a knowledge of all the facts essential to a full and free exercise of his judgment and will.

6. CONSTRUCTION OF WRITTEN CONTRACTS.— Whenever a person of sound mind, and capable of contracting, deliberately executes an instrument in writing, conveying property to another, the language and legal effect of which are fully known to him at the time, he must be held to have intended to do

what the instrument declares, unless by the fraud of the other party, which may consist in a promise by the grantee to do or not to do, to suffer or not to suffer, in reference to the grantor, or in reference to the subject matter of the contract, something which the grantee afterwards refuses to perform or permit, whereby the grantor is induced to omit something from the writing, which, but for such fraud, would have been inserted.

7. DIVORCE — FRAUDULENT CONVEYANCES.— Pending a suit for divorce, the wife, when asserting her claim for alimony, is within the meaning of the statutes prohibiting fraudulent conveyances, to be deemed a creditor.  Following Feigley v. Feigley, 7 Maryland, and other cases cited.

8. PUBLIC POLICY — FRAUDULENT CONVEYANCE.— Sound public policy, it seems, should require that a fraudulent grantor, who conveyed his property before contracting debts, for the purpose of shielding it from liability to future creditors, when in fact the real purpose of the deed, as between the parties, was not to divest the grantor of beneficial interest, should not receive the aid of the courts of the country against his grantee.

APPEAL from Bosque.  Tried below before the Hon. Jo Abbott.

Suit in trespass to try title by plaintiffs, Frances C. Kaiser and Elizabeth F. Sibley, joined by their husbands, against M. Dicas, J. K. Montgomery, G. O. Wood, A. Lott, Jr., and Ida Ellen Lott, the latter being a minor, for the recovery of two tracts of land in Bosque county, for partition of the same between the plaintiffs Frances C. Kaiser, Elizabeth F. Sibley and the minor defendant Ida E. Lott, and for the recovery of rents against the defendants except the minor. The petition alleged that the defendant A. Lott, Jr., by deed dated 1st July, 1871, conveyed these lands to Frances C. Lott, Elizabeth Lott and Ida E. Lott, and afterwards had the same recorded.

The defendant A. Lott, Jr., filed his answer, which contained general demurrer, general denial, plea of not guilty, and special answer, in substance, that: 1st. The deed was not executed on the 1st day of July, 1871, the date it bears, but in September, 1871. 2d. That it was not made for the purpose and consideration stated therein, but upon the express understanding and trust that it should not operate to disseize the grantor of the possession and control of the property during his life, but on the contrary was only intended to take effect at the death of said A. Lott, Jr., and that at the death of said A. Lott, Jr., all said land and other property mentioned in the instrument should go to and become the property of the said Frances, Elizabeth and Ida E. Lott, who were his children; that the instrument was intended to be and was testamentary in its character. The answer set forth fully the circumstances under which the instrument was executed and a copy of the deed was made a part of the answer.

The deed purports to convey the lands sued for; also various arti-

cles of personal property. The consideration is natural love and affection, and the instrument is in the ordinary form of a deed of gift. The defendant Ida E. Lott, by her guardian *ad litem*, R. E. Murrell, pleaded substantially as the plaintiffs, and prayed for the same relief as against the other defendants. The cause was tried before the judge without a jury, and resulted in a judgment in favor of the plaintiffs Frances C. Kaiser, Elizabeth F. Sibley and the minor defendant Ida E. Lott, for the recovery of the lands sued for, against the other defendants, and for costs; also a decree for partition dividing equally the lands between the plaintiffs and the defendant Ida E. Lott, appointing commissioners, etc. From this judgment the defendant A. Lott, Jr., appealed.

The first assignment of error was as follows: " The court erred in holding, as stated in his conclusions of law and fact: 1st. The evidence leads me to conclude that the deed from A. Lott, Jr., to his daughters was not *donatio causa mortis*. It was not because of the perils that surrounded him at the time of its execution, but to defeat any claim or supposed claim that his second wife, M. E. Lott, might assert in and to his property."

The second assignment of error was as follows: " The court erred in holding that A. Lott, Jr., intended to defeat any claim which his second wife, M. E. Lott, might have on his property during his life, but should have held that the deed was intended to protect his minor children of tender age at his death and in that event; and that the bad feelings existing between Lott and his wife made it necessary for him to protect his children in the event of his death, by making the deed, and because the proof shows that no estate in fact vested or was intended to be vested in Lott's daughters until his death."

The eighth assignment of error was as follows: " The court erred in holding that a present estate was conveyed by the said deed, and that the effect of the evidence in this case is not to defeat or destroy the legal title nor to establish that the deed was to operate as a testamentary devise."

*De Berry & Smith,* for appellants, cited: Reeves v. Bass, 39 Tex., 631; Mead v. Randolph, 8 Tex., 196; 3 Tex., 1; 5 Tex., 93; 21 Tex., 245; 25 Tex., 403; 1 Story's Eq. Jur., 155; Jarman on Wills, vol. 1, pp. 43–45, and p. 46, note 17, at bottom of page.

*Oatis & English,* for appellees, cited: Hart v. Rust, 46 Tex., 556; 3 Wait's Actions and Defenses, p. 495; Porser v. Tyler, 1 McCord

(S. C.) Ch., 18; Murry v. N. Y. L. & W. R'y Co., Sup. Ct. Pa.; 3 Wait's Actions and Defenses, p. 502; Meach v. Meach, 24 Vt., 591; Hill on Trustees, 59; Jenkins v. Eldridge, 3 Story, 182; Lands v. Jeffries, 5 Randolph, 211; Union Mutual Insurance Co. v. Campbell, 35 Am. Rep., 166; 95 Ill., 267; Ferguson v. Ferguson, 27 Tex., 339; Faulk v. Faulk, 23 Tex., 654.

STAYTON, ASSOCIATE JUSTICE.— The deed by which A. Lott, Jr., conveyed the two tracts of land in controversy to his daughters, Frances, Elizabeth and Ida, purports to have been made in consideration of the natural love and affection borne to them by their father, the grantor; in terms it is absolute, purports to convey *in presenti*, and contains no reservation or exception whatever.

The law presumes a deed made upon such a consideration, and purporting to be a gift by a father to his children, to be an advancement.

The deed is conclusively presumed, in the absence of accident, mistake or fraud, to use language which, when unambiguous, truly evidences the intention of the grantor.

The evidence renders it certain that the instrument does not fail truly to reflect the intention of the grantor at the time he executed and had it recorded, by reason of any accident or mistake of fact, by which he was influenced to use the language in which it is written, or by which he was prevented from using therein language which would have evidenced an intention which he now seeks to show existed.

He knew the legal effect of the language contained in the instrument before he executed it, if there is any faith to be placed in his own testimony or in the testimony of the attorney who drew it, or of the other person who was present at the time of its execution.

To control the legal effect of the instrument, however, he relied on his continued possession of the property which he conveyed to his minor children, and upon the parol evidence of a secret intention which he expected to produce should the grantees at any time assert rights under it, such as by the clear import of its language it conferred upon them.

The instrument was not executed through accident. The word "accident," as used as a ground for the exercise of equity jurisdiction, is thus defined by a distinguished elementary writer: "Accident is an unforeseen and unexpected event, occurring externally to the party affected by it, *and of which his own agency is not the proximate cause*, whereby, contrary to his own intention and wish, he

loses some legal right or becomes subject to some legal liability, and another acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain. If the party's own agency is the proximate cause of the event, it is a mistake rather than an accident." 2 Pomeroy's Equity, 823. Tested by this definition, which is sufficiently accurate, the instrument was not executed through accident; for the very thing which has occurred, *i. e.*, the assertion of title under the deed, was foreseen and could not in a legal sense have been unexpected; the execution of the deed, which was solely the act of its maker, was the proximate cause, the creation of the right which the grantees now assert.

The same author thus defines the word "mistake:" "Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception or conviction, induced by ignorance, misapprehension or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time." 2 Pomeroy's Equity, 839.

Tested by this definition there was no mistake. The maker of the deed knew its contents at the time he executed it, and he also knew the legal effect of the language which it contained; and if in either of these respects it was erroneous, in that it did not truly express the intention of the maker, that was known to him before he executed it; and the failure to insert such words in the instrument as would make it express truly the intention of its maker, when knowledge was brought home to him, that, as written, it did not do so, was negligence which takes from the transaction the element of mistake, either of law or fact.

It is not pretended that there was any actual fraud practiced on the grantor by the grantees, or by any one acting in their behalf in procuring the deed to be made; at the time it was executed all the grantees were minors of tender age.

Is there anything in the facts proved tending to show in the grantees such conduct as is termed in the books "constructive fraud?" The circumstances, condition or relation of the parties were not such as to raise a presumption of such fraud. Nothing is more common or natural than for a father to bestow gifts upon his children.

There was nothing in the nature of the things conveyed, nor in the instrument itself, indicating, as between the parties to it, anything

reprehensible in morals or in law; the conveyance purports to be on good consideration, which, as between the parties to it, is the only consideration which would, in the nature of the transaction, be expected; it was not made in contravention of any statute, public policy or good morals, so far as appears from the instrument itself, considered in relation to the parties to it; and if the object of the grantor was to put the property beyond the reach of third persons not parties to the transaction, who as creditors had the right to subject it to their claims, then be the transaction ever so fraudulent, the grantor, as against the grantees, could not assert its invalidity.

There was then neither accident, mistake nor fraud in the transaction which would enable the grantor to engraft upon the instrument by parol evidence terms not found in the language of the instrument itself.

The grantor knew that the deed conveyed the property named in it to his children *in presenti* and absolutely; talked of that fact with the attorney whom he employed to write it, and was confirmed by him in the construction which he himself put upon it, and after this he executed it, relying upon parol evidence at some future time to change the legal effect of the deed; relying upon such evidence not simply to retain an estate for life in the property, but actually to destroy that title which the deed in terms conveyed to his children.

If it be said that the mistake of the grantor and of his legal adviser was one of law, and we do not intend to enter into the question of the sufficiency of such a mistake to avoid a contract, then we may reply, as was replied in Irnham *v.* Child, 1 Brown's Chancery, 85: "Here there was no intention that the agreement (the intention not expressed) should make any part of the instrument. The thing insisted upon could not hold a moment, except as matter *dehors* the deed, and on a separate head of equity. Here a large annuity is sold for rather a small price, not for the natural sum; the agreement, they say, was that it should be redeemable; . . . it was agreed by both parties not to introduce the clause, but it was to stand on parol evidence. Then it results as a question whether I can admit the evidence. . . . It is necessary to see the statement of the bill; if it states that it was agreed that it should not be inserted, they cannot read it; but if it is stated that it was intended to be inserted but was suppressed by fraud, I cannot refuse to hear evidence read to establish the rule of equity. They are at liberty to read evidence to prove such a fraud as will make a ground of equity." To the same effect is the case of Portmore *v.* Morris, 2 Brown's Chancery, 219; Hunt *v.* Rousmaniere, 1 Peters, 17. In

commenting on the case of Irnham v. Child, Lord Eldon said: "Lord Irnham v. Child went upon an indisputably clear principle; that the parties did not mean to insert in the agreement a provision for redemption, because they were all of one mind that it would be usurious; and they desired the court not to do what they intended, for the insertion of that provision was directly contrary to their intention, but they desired to be put in the same situation as if they had been better informed and consequently had a contrary intention. The answer is, they admit it was not to be in the deed; and why was the court to insert it; where two risks had occurred to the parties, the danger of usury and the danger of trusting to the honor of the party?"

There is no doubt that relief in equity will be granted when the legal effect of a transaction is misapprehended, if such misapprehension be induced or brought about by misleading statements or acts of the other contracting party; for a court of equity will not permit a person to take advantage of another's ignorance or mistake, even of law, if such person knew of the misapprehension at the time of the contract and did not correct it; for to make the contract under such circumstances would be fraudulent.

If, in a case like this, the grantees, at the time of making the contract, had informed the grantor, or had induced him to believe, that it was not necessary to insert in the deed a clause showing that it was not to take effect so as to deprive him of the use of the property during his life, and that his possession and the parol evidence of the attorney who wrote the deed would have the same effect as such a clause in the deed, then they would certainly not be permitted to take advantage of the grantor's failure to insert in the deed what he would have inserted but for the misconception induced by them, or known by them to exist, and not by them corrected.

The same result would seem to follow if, between parties to a conveyance absolute in terms, there was an agreement that the grantees would hold the property conveyed in trust for the grantor during his life. Reeves v. Bass, 39 Tex., 631. This proposition, however, must, if correct, rest upon the ground of fraud, and the probability that but for the promise the grantor would have inserted in the writing the substance of the parol agreement or promise. The grantees were minors of tender age, and in no way influenced the terms of the instrument, nor promised to recognize in the grantor an estate or interest in the land which it conveyed to themselves, such as he would have retained if words had been inserted in it

such as would evidence the intention which he now alleges existed. Being minors they could not create a trust by contract.

No resulting or other trust could arise from the consideration nor from the language of the instrument; from any agreement or relationship between the parties, nor from the subject matter; and it is certainly true, that, as between a donor and one not sustaining to him any fiduciary or confidential relation, equity will not set aside a voluntary deed, however improvident it may be, if free from the imputation of fraud, surprise and undue influence, and freely executed by the donor with a knowledge of all facts essential to the free and full exercise of his own judgment and will. In this case the appellees are not seeking relief in equity, but are asserting a clear legal right.

The courts of this state have gone as far, perhaps, as any others in permitting the introduction of parol evidence to control the operation of language used by parties in written instruments, in actions between themselves; and in this case, all the evidence which the appellant could bring, to show what his secret intention was, was admitted, and upon that evidence, if we exclude from our consideration the finding of the court as to the fraudulent intent of the grantor in making the deed, we are of the opinion that the judgment ought to be affirmed.

For we are of the opinion that in every case in which a person of sound mind and capable to contract deliberately executes an instrument in writing conveying property to another, the language and legal effect of which are fully known to him at the time, he must be held to have intended to do just what the instrument declares; unless by the fraud of the other party, which may consist in a promise by the grantee to do or not to do, to suffer or not to suffer, in reference to the grantor, or in reference to the subject matter of the contract, something which the grantee subsequently refuses to perform or permit, whereby the grantor is induced to omit something from the writing, which, but for such fraud, would have been inserted.

Any other rule would practically destroy the value of the written evidence of the intention of the parties, which they for that express purpose have made; and in reference to the conveyance of lands would practically repeal the statute of frauds.

It appears, however, that the appellant married a second wife on August 9, 1871, with whom he lived until the 19th of the same month, at which time they separated, and on the 13th of September following a suit for divorce was instituted, which was pending on

the day the deed to his daughters was executed; the deed, however, bore a date anterior to that marriage. In the divorce suit, the wife was asserting a claim for alimony at the time the deed was made, and the suit resulted in a divorce, which the parties afterwards avoided by a subsequent marriage.

It also appears that although, at the time the deed was executed, the appellant was solvent, he subsequently became much embarrassed with debts, and that, while so, he repeatedly set up the title in his children through the deed in question, and thereby protected the property conveyed from his creditors.

The court found that the deed was made with no other intent than to avoid such claims as the wife of the appellant had upon him at the time. This finding is fully sustained by the evidence.

The court also found that the assertion of title in the appellant's children to the land through the deed, to protect it from sale by his creditors, was equivalent to the making of a deed to hinder, delay and defraud creditors, if the deed, when originally executed, was not effective to convey title to the children.

It seems to be well settled, that, pending a divorce suit, a wife asserting a just claim for alimony is, within the meaning of statutes prohibiting fraudulent conveyances, to be deemed a creditor. Feigley v. Feigley, 7 Md., 538; Claygett v. Gibson, 3 Cranch (C. C.), 359; Boils v. Boils, 1 Cold., 285; Morrison v. Morrison, 49 N. H., 69; Turner v. Turner, 44 Ala., 438; Brooks v. Caughran, 3 Head, 465; Bonslough v. Bonslough, 68 Pa. St., 495; Frakes v. Brown, 2 Blackf., 295.

This being true, while the deed was fraudulent as to the wife, it was binding upon the grantor, if its real purpose was to shield the property from the just claims of the wife by placing the apparent title in the children, while, as between them and their father, by him it was intended to be operative only at his death.

There is also much force in the proposition that one who, against his creditors, sets up a deed made before they became creditors, for the purpose of preventing the property thereby conveyed from being subjected to their debts, if in fact the deed was not, as between the parties to it, intended to divest the maker of his beneficial interest in the property conveyed, ought not to be heard, as between him and the grantee, to deny the validity of the conveyance, any more than if the deed had been really executed to hinder, delay and defraud creditors existing at the time the conveyance was made.

In the one case, as in the other, the deed is interposed for an unlawful purpose, and when so interposed it would seem that public

policy, as well as the statute, would require that the courts should refuse relief to the fraudulent grantor, if asked against the grantee, if they were *in pari delicto*.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered May 30, 1884.]