ELIZABETH LANDRUM ET AL. v. JEFF. LANDRUM ET AL.

Decided June 29, 1910.

**1.—Absolute Deed—Conveyance in Trust—Cancellation.**

In an action by heirs to cancel an absolute deed made by their parents to another heir, evidence reviewed and held sufficient to support a finding that said deed was executed by the parents for the sole purpose of enabling the son, the grantee named in said deed, to sell and convey the land described therein and to account to the parents, the grantors, for the proceeds thereof; and that the sale never having been consummated, the trust or purpose for which the deed was executed failed, and the other children and heirs were entitled to recover from the heirs of said grantee son their respective interests as heirs of the parents.

**2.—Same.**

A deed absolute on its face may be shown to be subject to a parol trust.

**3.—Same—Failure of Consideration—Remedy.**

Where a deed to land is executed in consideration of services to be rendered by the grantee, but the services are never in fact rendered, the grantor would not be entitled to recover the land when he neglected to reserve any title in himself, or to insert in the deed any condition of defeasance, or to make any provision for the reversion of the estate in the event the grantee should fail to perform the service which constituted the consideration.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*McDowell & Davidson* and *A. D. Lipscomb,* for appellants.—Neither

courts of law or equity have any right or power to cancel absolute deeds but for fraud, accident or mistake.  24 Am. & Eng. Ency. Law, 611; Lott v. Kaiser, 61 Texas, 672.

Where an absolute deed recites a valid consideration, which is shown to have actually existed as one of the facts of the transaction, then evidence to show that there was another and different consideration for the conveyance and that the latter failed, is in variance of a written contract and incompetent, and in violation of the statute of frauds.  Perry on Trusts, p. 59, s. 76; East Line & R. R. Ry. Co. v. Garrett, 52 Texas, 139.

One can not be permitted to engraft by parol either an express trust or condition subsequent on an absolute deed.  East Line & R. R. Ry. Co. v. Garrett, 52 Texas, 139; Perry on Trusts, s. 76.

It is clear error to permit any sort of trust or condition, either express or implied, to be engrafted on an absolute deed where the evidence of the condition or trust is uncertain or indefinite, whether the grave doubtfulness be inherent in the affirmative evidence or result from the conduct of the parties in whose favor the effect is sought to be produced.  Miller v. Thatcher, 9 Texas, 485; Markham v. Carothers, 47 Texas, 28; Cuney v. Dupree, 21 Texas, 219; Grooms v. Rust, 27 Texas, 231; East Line & R. R. Ry. Co. v. Garrett, 52 Texas, 139; Agricultural Assn. v. Brewster, 51 Texas, 263; Grace v. Hanks, 57 Texas, 15.

Where one conveys a piece of land as a consideration for services, the nonperformance of the services does not authorize a cancellation of the deed nor a decree establishing a resulting trust, but only gives a cause of action for damages.  Rainey v. Chambers, 56 Texas, 21.

Adverse claim of property, under a duly registered deed with payment of taxes and continuous possession and use for five consecutive years, is a bar to a suit to establish a resulting trust or express parol trust.  Rev. Stats. of Texas, title, "Limitation of Actions."

Conveyances by parent to child are not viewed by the law with suspicion, and one of the children to whom such a conveyance is made is not required by law to show any reason for his parents preferring him, there being no circumstances of duress or undue influence.  Beville v. Jones, 74 Texas, 153; McKay v. Peterson, 113 S. W., 981.

*V. A. Collins* and *Smith & Fleming,* for appellees.—Between parties to a deed, or their privies, a parol trust may be shown in behalf of the grantor upon allegations setting out facts of the trust, though such facts contradict the consideration as stated in the conveyance.  Smith v. McElyea, 68 Texas, 70; Whitfield v. Diffie, 105 S. W., 324; Diffie v. Thompson, 90 S. W., 194.

McMEANS, Associate Justice.—This suit was instituted by appellees, as heirs and assigns of Gabriel Landrum and wife, M. E. Landrum, both deceased, to cancel two deeds executed by said Gabriel Landrum and wife in 1901 to J. P. Landrum, the deceased husband and father of

appellants, the said deeds conveying 150 and 50 acres, respectively, of land in Jefferson County, the deed conveying the 150 acres reciting a consideration of one dollar "and the further consideration of the love and affection which we have for said J. P. Landrum, who is our son, and to whom we have heretofore donated the land herein described"; and the deed conveying the 50 acres reciting a consideration of one dollar, and "the love and affection which we have for the said J. P. Landrum, who is our son." The case was tried before the court without a jury, and the court concluded that the two conveyances were in fact upon trusts and that the trusts had failed, and entered a decree cancelling the deeds and awarding to plaintiffs an undivided interest in the lands.

The trial court filed its findings of fact and conclusions of law to which the defendants duly excepted and they have properly brought the case before us on appeal.

Appellants' first assignment of error is that the court erred in over-ruling the defendants' general exception to plaintiffs' petition, because the relief sought involves the cancellation of two deeds, and no sufficient reason for cancellation is stated in the petition.

The second assignment is that the court erred in rendering judgment for plaintiffs and intervener, cancelling the two deeds in question, because neither the pleadings nor evidence show any grounds of either fraud, accident or mistake to authorize a cancellation.

These assignments are grouped and are followed by the proposition that "Neither courts of law or equity have any right or power to cancel absolute deeds but for fraud, accident or mistake."

The tenth assignment is as follows: "The court erred in its judgment in so far as same affects the 50 acres of land in question, because, even taking the evidence most favorable to plaintiffs and intervener, it is manifest that the deed to it was intended to be absolute, and that if it was intended as compensation for making sale of the other 150 acres, it was clearly earned, since J. P. Landrum made a binding contract of sale of the 150 acres as shown by the undisputed evidence."

Appellants urge under this assignment the proposition that "Where one conveys a piece of land as a consideration for services, a nonperformance of the services does not authorize a cancellation of the deed nor a decree establishing a resulting trust, but only gives a cause of action for damages."

The allegations bearing on the nature of the transaction between the grantors and grantee in the two deeds are those embraced in clauses 5 to 8 of the amended petition, which are as follows:

"5. That before the execution of these two above mentioned deeds the said J. P. Landrum had made and entered into an agreement with one C. B. Hollifield to sell to the said Hollifield the 150 acres above described, or 150 acres out of the said 320-acre tract of the Hillebrandt survey, at $55 per acre, and at the time said agreement was made the said J. P. Landrum had no interest or title whatever in the land he had thus offered to convey, but he went to the said Gabriel Landrum and M.

E. Landrum and told them of his said contract with the said Hollifield and insisted on their executing to him a deed to the land so he could hold his contract with the said Hollifield without further troubling them.

"6. The said Gabriel Landrum and M. E. Landrum were anxious to sell the said 150 acres at the price agreed upon between the said J. P. Landrum and the said Hollifield, because they were old and needed the money, and didn't need the said 150 acres of land, since they still reserved the 50 acres upon which they resided.

"7. So that when this matter was presented to them, they agreed with J. P. Landrum as follows: If he would sell the 150 acres of land for them at the stipulated price of $55 per acre, and give them all the money, they would deed to him the 50 acres above referred to, which included their homestead, and that while they reserved the right to use said homestead as long as they lived, yet he should have said 50 acres at their death, and with this distinct agreement and understanding the two deeds above referred to were executed and delivered to the said J. P. Landrum.

"8. That the said J. P. Landrum failed in the consummation of the deal with the said Hollifield, and as he was only holding the two aforesaid tracts of land in trust for the said Gabriel and M. E. Landrum, he should have conveyed same back to them; but in about one month after the execution of the two aforesaid deeds the said M. E. Landrum died leaving the legal title in J. P. Landrum, but in trust for the other heirs of the said M. E. Landrum, and that subsequent to the death of the said M. E. Landrum the said J. P. Landrum died without having conveyed said land to the said M. E. Landrum or her heirs, and that subsequent to the death of said J. P. Landrum the said Gabriel Landrum died, and plaintiffs herein are entitled to five-sixths of the estate of said Gabriel Landrum and M. E. Landrum, and are entitled to five-sixths of the two aforesaid tracts of land, but defendants are in possession of said land, and deny the agreement between said Gabriel Landrum and M. E. Landrum on the one part and J. P. Landrum on the other at the time the two deeds were executed, deny plaintiffs' right to any portion of said two tracts.

"That plaintiff, V. A. Collins, is the owner of an undivided one-third of one-half, and an undivided one-third of five-sixths of said land. That his coplaintiffs are the owners of an undivided five-sixths and defendants the other one-sixth undivided, less the interest of V. A. Collins.

"Plaintiffs allege and would show the court that at the time of the execution of the two aforesaid deeds from Gabriel Landrum and his wife, M. E. Landrum, to J. P. Landrum, and long prior thereto, that the land described in said deeds was the homestead of the said Gabriel Landrum and M. E. Landrum, and that said land constituted their homestead up to the time of the death of M. E. Landrum, which occurred about June 15, 1901, and that said land was occupied and used continuously by the said Gabriel Landrum as surviving husband up to

the time of his death, which occurred in the latter part of 1908, as his homestead."

The evidence shows that prior to the execution of the deeds in question Gabriel Landrum and wife, M. E. Landrum, owned 200 acres in the Hillebrandt survey. The findings of fact filed by the trial court are as follows:

"I find that on May 2, 1901, Gabriel Landrum and his wife, M. E. Landrum, executed two deeds (general warranty deeds) to J. P. Landrum, who was the son of said Gabriel Landrum and M. E. Landrum, and who was the husband of the defendant, Elizabeth Landrum, and the father of her children named in plaintiffs' petition; said deeds reciting a consideration of love and affection for the said J. P. Landrum. That one of said deeds was for fifty acres of land, and the other for one hundred and fifty acres of land, the two together conveying the two hundred acres in the Levi Hillebrandt 320-acre survey in Jefferson County, Texas, at that time belonging to the said Gabriel Landrum and M. E. Landrum, and at that time constituting their homestead.

"I find that on April 27, 1901, six days prior to the execution of the above mentioned deeds, said J. P. Landrum made and entered into a contract with one Dr. Hollifield, in which the said J. P. Landrum agreed to convey, or cause to be conveyed, to the said Hollifield, 150 acres out of the said Hillebrandt survey and a part of the 200 acres that belonged to the said Gabriel Landrum and M. E. Landrum. That the said Hollifield had agreed to pay the said J. P. Landrum the sum of $8250 for the said 150 acres of land which the said J. P. Landrum had so agreed to convey to him, the said Hollifield; and to bind the said trade the said Hollifield had put up as 'earnest money' the sum of $825.

"That in the contract between the said J. P. Landrum and the said Hollifield, the said Landrum was to have two days after the said Hollifield's attorney had passed upon the title to said 150 acres, to perfect the title to the said 150 acres, if same was thought by the said Hollifield's attorney to be imperfect.

"That on or about the last day of April, 1901, the said Hollifield's attorney rejected the title to said 150 acres of land, assigning as his reason therefor that the said J. P. Landrum had no title to same but that title to same was then in said Gabriel Landrum and M. E. Landrum.

"That the said Gabriel Landrum and M. E. Landrum desired to sell the said 150 acres of land at the price agreed upon between the said J. P. Landrum and the said Hollifield.

"That late in the afternoon of May 1, 1901, the said J. P. Landrum, who was then in the city of Beaumont, sent a messenger for his father, the said Gabriel Landrum, who was then at his home on said land, about 15 miles distant from Beaumont, with the request that his said father should come to Beaumont at once to execute a deed for the land, said 150 acres of land, which the said J. P. Landrum had already agreed to sell to the said Hollifield, the said J. P. Landrum making the statement at the time of sending the said messenger that he, the said J. P. Land-

rum, had sold his father's land for him, and that it was necessary for his said father to come to Beaumont at once. That the said Gabriel Landrum did in fact come to Beaumont some time in the night of May 1, 1901, and that on the next day, May 2, 1901, the said Gabriel Landrum and the said M. E. Landrum executed to the said J. P. Landrum the two deeds above mentioned.

"I find that it was understood and agreed between J. P. Landrum on the one part, and Gabriel and M. E. Landrum on the other, at the time of the execution of said deeds, that the said Gabriel Landrum and M. E. Landrum should have the money which the said Hollifield was to pay for the land, towit, the sum of $8250, and that he, the said J. P. Landrum, was to have for his services, if the deal was closed successfully with the said Hollifield, the 50 acres of land conveyed to him, the said J. P. Landrum, in the deed above mentioned for that quantity, but that unless the deal with the said Hollifield was carried out and consummated as agreed upon between the said J. P. Landrum and said Hollifield for the sale of said 150 acres for the agreed price of $8250, that then the said J. P. Landrum was not to take anything by virtue of either of said deals made to him.

"That at the time said Gabriel Landrum and M. E. Landrum made said deeds to the said J. P. Landrum they and each of them made the statement to Judge A. D. Lipscomb, attorney for the defendants herein, to the effect that they, said Gabriel Landrum and M. E. Landrum, were in fact giving said land described in said deeds to the said J. P. Landrum, and that they said to said Lipscomb that they had in fact intended for a long time prior thereto to make a conveyance of said land to said J. P. Landrum. But in this connection, I also find from the undisputed evidence that it was at that time supposed by the said J. P. Landrum, who was insisting upon the said Hollifield consummating and carrying out his contract for the purchase of said 150 acres of land, that because the title to said 150 acres of land was not in said J. P. Landrum at the time he made the written contract with said Hollifield that the said Hollifield could not be held to a specific performance of his contract of purchase with the said J. P. Landrum, nor could he be held responsible in damages for his, Hollifield's, failure to carry out said contract; and this seems to have been the view entertained at that time by both Hollifield's attorney and the attorney for the said J. P. Landrum, and it is my conclusion that the statement made at the time of the execution of the above mentioned deeds by the said Gabriel Landrum and M. E. Landrum, to the effect that they were in fact giving said land to said J. P. Landrum, was merely in keeping with the understanding had between them and the said J. P. Landrum that they should so claim until the then pending deal between the said J. P. Landrum and said Hollifield should be consummated, or until a lawsuit which both parties to said contract of sale then apprehended would follow, should be settled.

"I find that in fact the contract between the said J. P. Landrum and said Hollifield for the purchase by the said Hollifield of said 150 acres

of land, was never carried out and consummated, but on the contrary the said Hollifield refused to carry out said contract and that no deed to him for said land was ever made, nor was any consideration for said land ever received by the said Gabriel Landrum or M. E. Landrum.

"I find that a lawsuit did in fact follow between the said J. P. Landrum and the said Hollifield, wherein the said J. P. Landrum, in his own name, sued the said Hollifield to recover judgment against said Hollifield for the breach of the contract between the said J. P. Landrum and the said Hollifield, and that said J. P. Landrum did in fact recover judgment against said Hollifield in said suit.

"I find that on June 15, 1901, the said M. E. Landrum died, and that in February following, the said J. P. Landrum moved with his family upon the land in controversy, and there lived with his father, the said Gabriel Landrum, up to the date of the death of the' said J. P. Landrum, in May, 1907. That the said Gabriel Landrum also continued to reside upon said land until his death in October, 1908. That the said J. P. Landrum and family and the said Gabriel Landrum during said time lived in and occupied the same house.

"I find that the land in controversy was not rendered for taxes nor were the taxes paid by anybody for the year 1902, but that J. P. Landrum rendered the land in controversy and paid all taxes due thereon in his own name, for each year after 1902 until his death, and that his estate has paid all taxes since his death. That if J. P. Landrum ever claimed any part of the land in controversy as his own, notice of such claim was never brought home to Gabriel Landrum or any of the plaintiffs in this suit, during the lifetime of the said J. P. Landrum.

"That the said J. P. Landrum on several occasions subsequent to the time of the execution of the above mentioned deeds, stated that the land was conveyed to him by his father and mother with the view and intention that he should sell the same for them, that is, 150 acres of the land in controversy, and that the other 50 acres he was to have as his own for his services in doing so.

"That the land in controversy, and which was the homestead of the said Gabriel Landrum and M. E. Landrum, was all the land they owned at the time of the execution of the above mentioned deeds, and that they were both very old and feeble persons at the time, and that the only personal property which they owned at said time consisted of thirty or forty head of cattle and a mule, and some kind of an old vehicle, and a few old farm implements, and a small quantity of ordinary furniture for their household.

"That the record fails to disclose any reason why the said Gabriel Landrum and the said M. E. Landrum should prefer their son J. P. Landrum to any of their other children, or why they would intend to dispose of to the said J. P. Landrum virtually all the property they owned at the date of the execution of said deeds. I find further, however, that long subsequent to the execution of the above mentioned deeds,

the said Gabriel Landrum, in an affidavit to an application for a pension as a Confederate soldier, stated that he owned no land; but why he made that statement I do not know."

These findings are sufficiently supported by the testimony appearing in the record. Upon the facts so found, the court concluded, as a matter of law, that J. P. Landrum never acquired title to any portion of the land in controversy, but that he was at all times holding the legal title thereto in trust for Gabriel and M. E. Landrum, and that upon their death the title vested in their heirs.

We think that the principles of equity called into exercise in the determination of questions involved in deciding the rights of the parties to the 150 acres of the land, are different from those arising under the deed conveying the 50 acres; and to those principles we will first address ourselves.

The law presumes property conveyed by deed from parent to child for an expressed consideration of natural love and affection, to take effect *in praesenti*, to be a gift by way of advancement. Like any other deed, its language is conclusively presumed, when unambiguous and in the absence of accident, mistake or fraud, to evidence the intention of the grantor. Lott v. Kaiser, 61 Texas, 665. In the case cited it is held, that one who makes such a deed to his minor children, knowing at the time its contents and effect, can not, by parol evidence, show that he intended it to take effect at his death, and that the only object in making it was to protect the property conveyed against the claims of his wife, who stood in the relation of creditor, in case he should die. But it is further held that equity will relieve on the ground of fraud when, between parties to a conveyance absolute in its terms, there was an agreement that the grantees would hold the property conveyed in trust for the grantor during his life—the fraud consisting of a violated promise, and the presumption that but for such promise the grantor would have inserted in the deed the substance of the parol agreement.

In the present case the court found—and his finding is sustained by the evidence—that the purpose of Gabriel Landrum and wife in conveying the 150 acres of land to J. P. Landrum was to enable the latter to sell the same to, and vest title in, Hollifield, who then contemplated purchasing it, it being understood and agreed that J. P. Landrum should turn over to his parents the entire amount received as purchase money, and that in consideration of the services of J. P. Landrum in making the sale he was to have the 50 acres remaining; and a deed for the 50 acres was in fact executed to him. We think the presumption arising from the transaction is that but for the promise of J. P. Landrum to make the sale and turn the proceeds over to the grantor, a promise which was violated, the grantor would have inserted in the deed some condition of defeasance, or the deed would have been so drawn as to show the true agreement between them. The violated promise, and the assertion of title under the deed after the effort to sell the land had ceased, was, we think, a species of fraud against which equity will relieve (Clark

v. Haney, 62 Texas, 514), and, although not so denominated in plaintiffs' petition, the facts therein stated were sufficient to charge J. P. Landrum with that which equity calls constructive fraud. In taking the legal title as he did, he took it in trust for a particular use and purpose, leaving in his parents the beneficial ownership. As said in 3 Pomeroy's Eq. Jur., page 2008, "Courts of equity, by thus extending the fundamental principles of trust—that is, the principle of a division between the legal estate in one and the equitable in the other—to all cases of actual or constructive fraud and breaches of good faith, are enabled to wield a remedial power of tremendous efficacy in protecting the rights of property; they can follow the real owner's specific property, and preserve his real ownership, although he has lost, or even never had, the legal title, and can thus give remedies far more complete than the compensatory damages obtainable in courts of law." That a deed absolute on its face may be shown to be subject to a parol trust seems to be well established in this State. Mead v. Randolph, 8 Texas, 196; McClenny v. Floyd, 10 Texas, 163; Barnett v. Logue, 29 Texas, 289; Johnson v. Deloney, 35 Texas, 47; Gibbs v. Penny, 43 Texas, 560; Moreland v. Barnhart, 44 Texas, 283; Clark v. Haney, 62 Texas, 511; Smith v. Walker, 81 Texas, 47; Hawkins v. Willard, 38 S. W., 365; Whitfield v. Diffie, 105 S. W., 324; Diffie v. Thompson, 90 S. W., 194.

As said in Mead v. Randolph, *supra,* "The trust existing in parol is established to prevent the fraudulent use of the deed or written instrument, for . . . though there be no fraud in the execution of the deed, yet if it be afterwards converted to a fraudulent purpose, or to one wholly different from that intended by both parties at the time of its execution, equity ought to interpose and prevent such improper use and establish the trust for which it was executed."

The facts in the case of Whitfield v. Diffie, *supra,* are substantially these: Long and his wife, being the owners of land in Red River County which they desired to sell, made a deed thereto to Diffie, which upon its face appeared to be an absolute conveyance of the land, and under which Diffie claimed. Long and wife subsequently sold the land to other parties and a suit by them against Diffie resulted. Long was impleaded on his warranty. He pleaded, and the evidence was sufficient to authorize a finding, that the deed from himself and wife to Diffie was intended by them as a mere power of attorney or conveyance, placing the legal title to said land in Diffie in trust, to be by him sold and the proceeds of such sale applied to the payment of the debts of said Long and wife, and the balance to be paid to themselves after Diffie had retained sufficient to pay him for his trouble. The court instructed a verdict for Diffie and this was held to be error for which the judgment of the lower court was reversed and remanded.

We think that the conveyance to J. P. Landrum, though absolute in form, was in reality in trust; and while it placed the legal title in him, he held it, particularly after the purpose for which it was executed failed,

in trust solely for the grantors, and that such trust was sufficiently established by the evidence, and the court did not err in so holding.

As before stated, the court found, and the evidence shows, that the deed to the 50 acres was executed to J. P. Landrum as compensation for making sale of the 150 acres. The consideration stated in the deed is "love and affection," but the evidence leaves no doubt that the real consideration was as above stated. There is no evidence that would warrant a finding that the land was conveyed in trust, but at most that it was conveyed for a consideration that failed. The grantors neglected to reserve any title in themselves, or to insert in the deed any conditions of defeasance, or to make any provision for the reversion of the estate in the event the grantee should fail to perform the service which constituted the consideration. Under the authorities we think that it must be held that the plaintiffs can not recover the 50 acres of land on account of the nonperformance by J. P. Landrum of the agreement which induced the conveyance thereof to him. Chicago, T. & M. Ry. v. Titterington, 84 Texas, 223; Elliott v. Elliott, 50 Texas Civ. App., 272 (109 S. W., 217); Mayer v. Swift, 73 Texas, 367; Moore v. Cross, 87 Texas, 561; Freeman v. Jones, 43 Texas Civ. App., 332 (94 S. W., 1072); East Line & R. R. Ry. v Garrett, 52 Texas, 139.

In consideration of the foregoing we conclude that the judgment of the court below should be affirmed as to the 150 acres of land in controversy, but that as to the 50 acres the judgment should be reversed and here rendered for appellants, and it has been so ordered.

We have examined the other assignments urged by appellants and are of the opinion that such of them as have not been disposed of in the foregoing conclusions present no reversible errors, and are overruled.

*Affirmed in part, reversed and rendered in part.*

Writ of error refused.