ROBINSON et al. v. FAVILLE et al.
(No. 6228.)

(Court of Civil Appeals of Texas. San Antonio. May 28, 1919. Rehearing Denied June 18, 1919.)

1. DEEDS &70(1)—CANCELLATION—PROMISE TO EXECUTE WILL—DISREGARD OF PROMISE.

Daughter's deed to mother made upon mother's promise to make will devising her estate to daughter will not be canceled upon mother's refusal to make such will, unless mother made the promise with the design and intention of disregarding it.

2. DEEDS &145—GRANTEE'S PROMISE—CONDITION—COVENANT.

Grantee's promise to grantor inducing execution of deed will be construed a covenant instead of a condition in case of doubt.

3. DEEDS &145—PROMISE TO EXECUTE WILL.

Mother's promise to make will giving estate to daughter inducing daughter to execute deed to mother was a covenant, and not a condition.

4. TRUSTS &43(3) — EXPRESS TRUST—ABSOLUTE DEED—PAROL TESTIMONY.

An express trust may be ingrafted on a deed conveying the absolute title by parol testimony.

5. TRUSTS &35(3) — INGRAFTING TRUST ON DEED — ALLEGATION OF FRAUD—GRANTEE'S REFUSAL TO FULFILL PROMISE.

Where a mother induced her daughter to execute deed by promise to make will devising estate to daughter, equity will ingraft a trust on the deed upon mother's refusal to fulfill promise, without an allegation of fraud.

6. WILLS &58(1)—PROMISE TO MAKE WILL—ENFORCEMENT AGAINST ESTATE.

Mother's promise to make will devising estate to daughter as inducement to execution of

daughter's deed to mother is enforceable against mother's estate.

**7. TRUSTS ☞362—ACTION TO INGRAFT PAROL TRUST UPON ABSOLUTE DEED—DEFENSE.**

In a daughter's action to ingraft trust upon her deed to her mother upon the mother's refusal to make will devising estate to daughter pursuant to her promise to so do, made as inducement to execution of deed, it is no defense that such promise can be enforced against mother's estate upon her death, since mother may dispose of property before her death.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Kate Robinson and another against Margaret Faville and another. Judgment of dismissal, and plaintiffs appeal. Reversed and remanded.

James F. Boyls and Lewright & Douglas, all of San Antonio, for appellants.

Terrell & Terrell, of San Antonio, for appellees.

FLY, C. J. This is a second appeal of this case; the result of the first being reported in 201 S. W. 1061. The object of the suit, which was instituted by Kate Robinson and her husband, George C. Robinson, against Margaret Faville and Ada M. Atchison, was to cancel a certain deed made by appellants to Mrs. Faville, which they allege was procured from them by fraud or to ingraft a trust on the same. The court sustained a general demurrer and special exception to the fifth amended petition, and, appellants declining to amend, the cause was dismissed.

The allegations in the petition show that Mrs. Faville is the mother of Kate Robinson and Ada M. Atchison; that in 1869 F. D. Faville, at that time the husband of Margaret Faville, acquired a parcel of land on the east side of Soledad street, in San Antonio, Tex., the purchase price being $760, being lot 7 in city block 138, division 2. After acquiring the property, Faville abandoned his wife, leaving her and his daughter Kate to pay off claims against the property. The other daughter, Ada, married William W. Cox in 1879, and he died in Kenedy in 1886, and in December, 1897, she married J. T. Atchison, and lived with him in Gainesville, Tex., until 1916, when he died, since which time Mrs. Atchison has resided in San Antonio and Gainesville. It was further alleged that Kate Robinson spent her girlhood with her mother on the property in question, assisting her in conducting a rooming house, except when she was absent teaching school and earning money to pay off certain claims against the property amounting to $1,100. In 1889 Kate married George C. Robinson, and they made their home with Mrs. Faville, and continued to live with her until 1916, when they were ordered off

by Mrs. Faville. In December, 1899, Mrs. Faville obtained a divorce from her husband, and in the decree was the provision that Mrs. Faville should be entitled during her life to the possession, revenues, use, and enjoyment of the property in question, and at her death it was to be divided between Mrs. Atchison and Mrs. Robinson, the former receiving one-third, and the latter the remaining two-thirds, the larger share being given to Mrs. Robinson because of her services in paying for and keeping up the property. It was further alleged that at or about the date of the divorce Mrs. Faville informed her daughter Kate that Mrs. Atchison had volunteered to convey her one-third expectancy to her mother, and suggested that, if Kate Robinson would convey her interest, she, Margaret Faville, would bequeath all her property to Mrs. Robinson, and that Mrs. Atchison would be given $1,000 for her interest, that on January 23, 1900, a joint deed was made by Mrs. Atchison and Mrs. Robinson conveying all their interest in the land to Mrs. Faville, and on December 8, 1906, Mrs. Faville made a will in which she bequeathed to Mrs. Atchison an interest of $1,000 in the property, and to Mrs. Robinson all the residue of the estate, but that afterwards Mrs. Faville repudiated her agreement, and Mrs. Robinson seeks to cancel her deed, or ingraft a trust on it.

There is no allegation in the petition that Mrs. Faville at the time she made the promise to bequeath the whole of the property to Mrs. Robinson, that is, in 1900, did not fully intend to comply with her promise, but, on the other hand, the circumstances alleged tend to show that at that time she did intend to comply with her promise. It is alleged that she actually executed a will which was intended to carry the promise into execution, and kept the will for six years, when she destroyed it. The reason for such destruction goes to show that the promise was made in good faith, for it is alleged:

"A life of toil was beginning to tell on Mrs. Faville, and she gradually grew to feel that she was no longer obligated to recognize any right in said property in the Robinsons. Plaintiffs are unable to account for this change in their mother, but they attached no importance to the increasing frequency of unpleasant family episodes until they received notice from an attorney advising them in effect that Mrs. Faville no longer desired them to occupy said property."

In other words, the effect of the allegations is that family disagreements had caused Mrs. Faville to change her mind about bequeathing the property to Mrs. Robinson.

[1] The decision of this court on the former appeal is probably not as plainly and clearly expressed as it should have been, but we think there is no ground for mistaking that part of it, based on decisions of the

appellate court of Texas, to the effect that, where it is sought to set aside a deed for failure to keep an oral promise, such promise will not form the basis for such cancellation unless it is alleged and proved that there was an intention at the time the promise was made not to carry it into execution. Let it be admitted that the promise of Mrs. Faville formed a large part of the consideration for the execution of the deed, and that appellants had the right to show that promise; there would be no basis for the cancellation of the deed, unless it was shown that at the time the promise was made it was the design and intention of the party making it to disregard it.

In the case of Taylor v. Merrill, 64 Tex. 494, it is held that it was not necessary to allege fraud, accident, or mistake in order to show that the consideration was different from that recited in the deed, and it was sought to cancel the notes because full consideration had been paid for the property received by the defendant. The cancellation of the notes was sought because certain personal property not mentioned in the deed had been included and had not been delivered. The court said:

"This principle of allowing extraneous proof of a different or additional consideration is not bounded upon any right, such as is enforced in courts of equity, to have an instrument reformed when, through fraud, accident, or mistake, it does not state truly the contract of the parties. It is a common-law rule, and enforced in courts having common-law jurisdiction. In the present case we think no allegation of fraud, accident, or mistake was necessary to be made. The answer, too, sought only to establish a consideration in addition to the one recited in the written instruments evidencing the transaction; and then to show that this consideration had in part failed as well as that which appeared in the writings."

The case now before this court is a very different one from the case cited. This is an action to destroy a contract evidenced by a warranty deed, and in order to accomplish that end it was absolutely necessary to allege and prove that when the deed was obtained Mrs. Faville made verbal promises to obtain its execution, which she at that time did not intend to fulfill. In other words, in order to cancel a deed or other contract in a court of equity, there must in Texas be allegations and proof of fraud, accident, or mistake.

[2] It is the general rule that mere failure by a grantee to perform a promise, which formed the whole or part of the consideration inducing an executed conveyance, gives no right of rescission in the grantor, either at law or in equity, unless such promise amounts to a condition, and in case of doubt as to the intention, the promise of the grantee will be construed to be a covenant. 2 Pom. Eq. Jur. 6, § 686; Railway v. Titterington, 84

Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39. As stated by Pomeroy, this rule has been found to work a great hardship in cases where aged people convey all their property to relatives, under an agreement, often oral, that the grantee will support and maintain the grantor during his life, and the promise is breached. Legal relief by suits for damages is inadequate, and some courts have evaded the rule and reinvested the title in the grantor. This has been done in Illinois and Texas, where rescission has been granted on proof of fraudulent intention at the time the promise was made not to perform it. In some states even this relief is refused, while other subterfuges are adopted in others to give relief.

[3] The deed in this case is clearly not executory, but an executed instrument. Under Texas and other authorities it must be held that the promises of Mrs. Faville, as alleged in the petition, were in the nature of covenants, and not conditions, and appellants are entitled to no relief except what might be obtained through a suit for damages. Railway v. Titterington, herein cited, and cases cited therein; Railway v. Smith, 98 Tex. 553, 86 S. W. 322.

In the case of Moore v. Cross, 87 Tex. 557, 29 S. W. 1051, it was alleged that the plaintiff had been induced to exchange property with the defendant on his promise to employ him at so much a month in order that the difference in the values of the exchanged properties might thus be paid, and fraud was alleged in the making of such promises. The court held:

"It does not appear from the evidence that the alleged promises constituted any part of the consideration for the exchange of the property. If, however, they were the consideration, and had been inserted in the deed in the terms stated in the conclusions of fact, their breach would not afford ground for canceling, * * * but the party must resort to his action for damages, if any."

This was because the consideration was a mere promise.

In the case of Carter v. Ware Commission Co., 46 Tex. Civ. App. 7, 101 S. W. 526, this court held:

"But it is well established that equity will not cancel contracts on * * * a mere failure of a party to fulfill a promise therein to perform some act in the future. * * * An exception is recognized where the person making the promise intended at the time not to perform it, thus fraudulently making use of the promise as a device to procure the contract or deed. The testimony totally fails to show that defendants, when they made the promises testified to by plaintiff, had any such purpose or intent. In fact, such a matter was not alleged."

To the same effect are Detroit Elec. Works v. Railway, 29 S. W. 412, White v. White, 95 S. W. 736, and Insurance Co. v. Seidel, 52

Tex. Civ. App. 278, 113 S. W. 946. It was held in the last cited:

"It is the general rule that a promise to perform some act in the future will not amount to fraud in the eyes of the law, and, although it may have been the propelling inducement to the execution of the contract, and though it may have been totally disregarded, it could not be made the basis for a rescission. There is, however, an exception to the rule recognized in Texas, in this, that if, at the time the promise is made, it was the design and intention of the party making it to disregard it and with no intention to perform it, and it was only made to deceive and intrap the other party, then such promise, in case the refusal to perform took place, would amount to such actual fraud as would justify and authorize the rescission of a contract induced by such promise."

[4, 5] Appellants pray in the alternative in their petition that a trust be ingrafted on the deed under the facts alleged as hereinbefore stated. It is established by a long and unbroken line of decisions in Texas that an express or direct trust may be ingrafted on a deed conveying the absolute title by parol testimony. These decisions range from James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743, down to the present time, and a full list of such decisions are collected in Michie's 16 Ency. Dig. Tex. Rep. p. 861. The ingrafting of such trust upon a deed absolute upon its face would not have the effect of destroying the deed, and therefore would not cause a rescission of such deed and accomplish indirectly what could not under the allegations be accomplished in the effort to obtain a cancellation of the deed. As hereinbefore held, a court of equity could not give relief to appellants by a rescission of the contract of sale under their allegations, but, as the allegations show that the deed was executed and delivered on the faith of a promise afterwards broken, equity will grant relief, by ingrafting a trust on the deed. To accomplish this it was not required that fraud should be alleged. Mead v. Randolph, 8 Tex. 191; McClenny v. Floyd, 10 Tex. 159; Smith v. Eckford (Sup.) 18 S. W. 210; Barnett v. Logue, 29 Tex. 289; Gibbs v. Penny, 43 Tex. 560; Moreland v. Barnhart, 44 Tex. 283; Lott v. Kaiser, 61 Tex. 672; Clark v. Haney, 62 Tex. 511, 50 Am. Rep. 536; Brotherton v. Weathersby, 73 Tex. 471, 11 S. W. 505; Smith v. Smith, 81 Tex. 47, 16 S. W. 637; Railway v. Jones, 82 Tex. 156, 17 S. W. 534; Hawkins v. Willard, 38 S. W. 365; Cummings v. Moore, 27 Tex. Civ. App. 555, 65 S. W. 1113; Diffie v. Thompson, 90 S. W. 194; Landrum v. Landrum, 62 Tex. Civ. App. 43, 130 S. W. 907; Lester v. Hutson, 167 S. W. 321; Whitfield v. Diffie, 105 S. W. 324.

In the cited case of Mead v. Randolph it was stated by the Supreme Court, through Chief Justice Hemphill:

"It seems, then, now to be beyond question, that parol evidence is admissible to prove that a deed or instrument, absolute on its face, was executed and delivered upon certain trusts, not reduced to writing, and which the grantee promised to perform, and that the same may be established. * * * The trust existing * * * is established, to prevent the fraudulent use of the deed or written instrument; for, * * * though there be no fraud in the execution of the deed, yet if it is afterwards converted to a fraudulent purpose, or to one wholly different from that intended by both parties at the time of its execution, equity ought to interpose and prevent such an improper use, and establish the trust for which it was executed."

As to the necessity of alleging fraud in terms, the case of Smith v. Eckford, 18 S. W. 210, decided by the Commission of Appeals and adopted by the Supreme Court, held:

"We also deem it almost a legal axiom. recognized in repeated decisions in this state, that a conveyance of property, though evidenced by a deed absolute on its face, as is the bill of sale from the sheriff in this case, may be shown by parol to be, in fact, only a conveyance in trust or upon conditions, and that the real beneficiary, or owner of at least the equitable title, may be thus disclosed, and his interest protected, under such circumstances as this case presents. The real consideration of the transfer, and the intention of the parties, may be developed outside of the terms of the written instrument, upon allegations of the true intention and consideration, without, as we think, the necessity of alleging, in cases like the present (as contended by appellant's counsel must be done), either fraud or mistake in procuring the conveyance in the first instance. Mead v. Randolph, 8 Tex. 192. The fraud arises from the subsequent perversion of the trust."

In other words, Mrs. Faville may have made the promise to devise the land in the utmost good faith, yet, if afterwards she changed her mind and determined to hold the land as her own, unincumbered with any trust, to prevent such fraud a trust in the property would be declared by a court of equity.

In the case of Clark v. Haney, 62 Tex. 511, 50 Am. Rep. 536, it is held, following Browne in his work on the Statute of Frauds:

"That where a verbal promise of the defendant to make a certain disposition of lands is the means of obtaining to himself the legal title, so that in fact he practices a deception upon his grantor by so obtaining the lands, and then holding and dealing with them as his own, a court of equity will compel him to perform his verbal agreement. All that is necessary is that the grantor has been duped by such promises into assigning his right to property, and that the trust has been afterwards repudiated. * * * To allow the grantee to repudiate the trust after he had obtained the apparent title and gone into possession, and to appropriate to himself the whole benefit of the property, would be to sanction a fraud and a wrong which it is the duty of a court of equity to prevent or to remedy."

[6] It is true the contract alleged is one that could be enforced against the estate of Mrs. Faville. As said in Jordan v. Abney, 97 Tex. 296, 78 S. W. 486:

"That a contract between two persons upon valuable consideration, that one will, at his death, leave property to the other, is enforceable where no statute is contravened, is held by an almost unbroken current of authority, English and American. Such contracts, when sufficiently certain, have been held valid and enforceable, in equity as well as at law, whether they provide for the payment of money, or the leaving of specific property, or of all or a moiety of that which the obligor should leave at his death. They have usually been put in the form of agreements to bequeath by will, but this has not been regarded as an essential feature; agreements to leave the property, or that the obligee should have it, at the death of the obligor, being held sufficient."

[7] It follows from this ruling that appellants could enforce the trust against the estate of Mrs. Faville, but that, under the allegations of the petition, would not give the requisite protection, for Mrs. Faville has repudiated the trust and might sell the property to an innocent purchaser and defeat the claim of appellants. The remedy of declaring a trust and putting the world upon notice would seem clear and appropriate.

We think that the doctrine herein declared as to parol trusts is well established, not only in Texas, but in the courts of many states. Perry, while stating in a footnote that there is a conflict of authority on the subject, states:

"The weight of authority, however, is to the effect that it is unnecessary to show any actual fraudulent intent at the time the promise is made or at the time the title vests in the alleged trustee, if the promise was the main inducement of the transfer to him or of the ancestor's failure to make a deed or will in favor of the intended beneficiary. Some of the decisions are based upon the theory that fraud at the time of making the promise will be inferred from failure to perform it subsequently. * * * But most of the cases go to the extent of holding that the fraud lies in failure to carry out the parol agreement made under such circumstances, even if the agreement was made with an honest intention of performing it." A long list of authorities is cited to sustain the text. Perry on Trusts (6th Ed.) § 181.

It has been held that a trust cannot be established by parol evidence that would have the effect of destroying the deed or other written instrument, and if the allegations as to a trust in this case would, if proved, have that effect, they could not be sustained. Devlin on Real Estate, § 834. The establishment of the trust sought in this case will not affect the validity of the deed, but will merely compel a performance of the promises that induced its execution. There is no effort to show that there was no consideration for the execution of the deed, nor that it is not an absolute conveyance, but it is merely intended to obtain a declaration of a court of competent jurisdiction that a trust was impressed by the parties to the deed upon the property. Williams v. Emberson, 22 Tex. Civ. App. 522, 55 S. W. 595.

There is nothing in the allegations of the petition to indicate any fraudulent design to deprive Mrs. Atchison of her part of the property, and what was said in regard to this subject in our former opinion was evoked by certain evidence on the former trial. If appellants used no inducements to cause Mrs. Atchison to sign the deed, and if she voluntarily gave her interest in the land to her mother, the latter could dispose of it as she saw fit, and there would be no reason in depriving Mrs. Robinson of the two-thirds interest in the property upon which she seeks to establish the trust. Whatever may have been the purpose of Mrs. Faville, it cannot affect the bona fides of Mrs. Robinson in the absence of her knowledge and participation in the same.

The judgment is reversed, and the cause remanded.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes