RUTHERFORD et al. v. DEAVER.
(No. 2202.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 27, 1920. Rehearing Denied Feb. 5, 1920.)

1. Descent and distribution ⊜⇒95—Conveyance by father of separate property to children of first marriage constitutes advancement.

Where a parent who had married a second time conveyed to children of the first marriage 175 acres of a parcel of land which he owned as his separate property, held that such conveyance will be deemed an advancement, and hence the grantees must account for the advancement in settlement of the parent's estate.

2. Descent and distribution ⊜⇒112—Advancement to children of first marriage held of such value as to fully satisfy their claims as heirs.

Where a father conveyed to children of his first marriage 175 acres of a parcel which was his separate estate, retaining 200 acres therein, and the jury found that the 175 acres conveyed was of the value of the parcel retained which was subject to the second wife's life estate, held that, as the two children of the first marriage were bound to account for the advancement under Vernon's Ann. Civ. St. 1914, art. 2467, the child of the second marriage, who took the land at the death of her mother, was entitled to it free from claims of the other children; the value of the mother's estate being computed at more than one-half of the value of the land.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Action by Mrs. M. F. (Birdie) Rutherford and others against Mrs. Pete Deaver. From a judgment for defendant, plaintiffs appeal. Affirmed.

By his first wife Pete Fulbright, Sr., had two children, a daughter named Birdie, who married one Rutherford, and a son named Henry E., who died, leaving as his sole heirs a daughter and two sons, who with Mrs. Rutherford were plaintiffs in the court below and are appellants here. By his second wife Pete Fulbright, Sr., had one child, a daughter, also named Pete, who married one Deaver. She was the defendant in the court below and is the appellee here. Pete Fulbright, Sr., owned as a part of his separate estate 375 acres of the John Laud survey in Red River county. By a deed dated February 2, 1880, for love and affection he had for his daughter Mrs. Rutherford, and his son, Henry E., he conveyed to them 175 of said 375 acres of land. Pete Fulbright, Sr., died intestate in May, 1881, owning the remainder of said 375 acres and an interest in the community estate between him and his second wife, consisting, it seems, of personal property and two tracts of land. November 29, 1882, the 200 acres of the Laud survey owned by said Pete Fulbright, Sr., when he died, was set apart to his widow and their daughter, Pete, then a minor, for their use as a homestead. At the same time certain personal property was set apart to them. The proceeds of certain other personal property sold by Pete Fulbright, Sr.'s, administrator was used to pay debts of the estate and allowances made by the probate court to said widow and her minor daughter. A partition of the property remaining (except the 200 acres in controversy here) in which Pete Fulbright, Sr., owned an interest was had between his heirs, including Mrs. Rutherford and H. E. Fulbright, in 1889. In that partition no account was taken of the fact that Pete Fulbright, Sr., during his lifetime had given 175 acres of the Laud survey to Mrs. Rutherford and H. E. Fulbright. The widow of Pete Fulbright, Sr.'s, second marriage took possession of the 200 acres of the Laud survey at the time it was set apart to her and her minor daughter in 1882, and thereafter until her death in July, 1916, used it as her homestead. Mrs. Rutherford and the children of H. E. Fulbright claimed that the 200 acres was owned as follows: One-third by Mrs. Rutherford, one-third by the children of H. E. Fulbright, deceased, and one-third by Mrs. Pete Deaver; and the object of their suit against Mrs. Deaver was to have it partitioned accordingly. Defending the suit, Mrs. Deaver, claimed that the 175 acres, conveyed to Mrs. Rutherford and H. E. Fulbright in 1881 was an advancement to them by Pete Fulbright, Sr., out of his estate; that said Mrs. Rutherford and H. E. Fulbright at once took possession of, and ever afterwards used, the 175 acres free of any charge or claim thereto in favor of any other persons; that the widow of the second marriage owned a life estate of one-third in the 200 acres remaining of the Laud survey, and that the same was, besides, charged with the right of said widow to use it as a homestead while she lived; that said widow did so use same; that the value of the 175 acres advanced to said Mrs. Rutherford and H. E. Fulbright, as compared with the value of the 200 acres remaining of the 375 acres, charged as it was with the life estate and homestead right in the widow of the second marriage, exceeded the value of the interests owned by Mrs. Rutherford and H. E. Fulbright in the estate of their father; that said Mrs. Rutherford and H. E. Fulbright therefore

were not entitled to any part of said 200 acres; and that she, Mrs. Deaver, was entitled, as against them, to all of said 200 acres. The appeal is from a judgment in Mrs. Deaver's favor in accordance with her contention.

T. T. Thompson, of Clarksville, and Wilkinson & Davidson, of Mt. Vernon, for appellants.

E. S. Chambers, of Clarksville, and Mahaffey, Keeney & Dalby, of Texarkana, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] That it appeared as a matter of law that the conveyance to H. E. Fulbright and Mrs. Birdie Rutherford of 175 acres of the John Laud survey, evidenced by the deed dated October 7, 1881, was a gift to them by their father Pete Fulbright, Sr., is affirmed by all the parties to the appeal. They disagree, however, as to whether the trial court has a right to say it also appeared as a matter of law that the gift was an advancement by said Pete Fulbright, Sr., to his said children. Appellee insists that the gift was within a well-established rule (18 C. J. 933, § 258, and the numerous authorities there cited; 1 R. C. L. 668, § 21, and authorities there cited) that in the absence, as was the case, of pleading and proof to the contrary "the law presumes," quoting from Landrum v. Landrum, 62 Tex. Civ. App. 43, 130 S. W. 910, citing Lott v. Kaiser, 61 Tex. 665, "property conveyed by a deed from a parent to child for an expressed consideration of natural love and affection, to take effect in presenti, to be a gift by way of advancement."

Appellants concede the case would be within the rule if it appeared that the land given to H. E. Fulbright and Mrs. Rutherford belonged to the community estate between the donor, Pete Fulbright, Sr., and his first wife. They insist the rule was not applicable because it appeared, instead, that the land belonged to the separate estate of said Pete Fulbright, Sr., and cite Sparks v. Spence, 40 Tex. 693, as supporting their contention. The land in controversy in that case belonged to the community estate of the first marriage. The suit was by children of that marriage against the widow and children of the second marriage (to whom the father had devised more than one-half of the land), to recover the one-half interest which their mother owned in the land. It appeared that the father in his lifetime, by deeds purporting to be gifts, had conveyed a part of the land to certain of the children of the first marriage, and to others of them land belonging to his separate estate. The Supreme Court held, it seems, that a presumption should have been indulged, until rebutted, that the conveyances, so far as they were of the community property of the first marriage, were "intended to be," quoting, "in discharge pro tanto of the child's interest," but that such a presumption should not have been indulged so far as the conveyances were of other property. Exactly what the court meant by its ruling is not clear to the writer. It seems that the contention in that case by the widow and children of the second marriage was that the conveyances by the father to children of the first marriage should be treated "as advancements, intended and accepted in satisfaction of their interest in their mother's community estate"; in other words, as a satisfaction, in effect, by the father of a claim the children of the first marriage had against him as the trustee of their interest in their mother's community half of the land. It may be that the distinction the Supreme Court made was based on the fact that a conveyance by a father to his children of community property not in excess of the interest the mother owned when she died is not a gift at all, but is a conveyance of a thing the children already rightfully owned, while the conveyance to a child by a father of property belonging to his separate estate is not a conveyance of a thing the child owned. But whatever may have been the basis of the conclusion reached by the court in that case, if it was that, notwithstanding the absence of testimony to the contrary, a presumption should not be indulged that a substantial gift, by an intestate parent of property belonging to his separate estate, to one of his children, was intended as an advancement to that child, we think it was wrong and against the overwhelming weight of the authorities. 1 R. C. L. 668; 18 C. J. 912, 933. Therefore we hold that the trial court in the instant case did not err when he treated the conveyance to Mrs. Rutherford and H. E. Fulbright as an advancement to them by their father out of his estate, and refused to submit to the jury an issue as to whether it was such an advancement or not.

[2] Appellants insist that if the trial court did not err when he treated the conveyance of the 175 acres as an advancement to Mrs. Rutherford and H. E. Fulbright for the value of which they had to account in the partition they sought of the 200 acres, he did err when he determined that the value of the 175 acres advanced to them was equal to the value of the interest they were entitled to in the estate of their father, and that they therefore did not own an interest in the 200 acres, and were not entitled to have it partitioned between themselves and Mrs. Deaver. On special issues submitted to them the jury found that the 175-acre tract was worth $2,000 at the time Pete Fulbright, Sr., gave it to Mrs. Rutherford and H. E. Fulbright and at the time said Pete Fulbright, Sr., died. They further found that the 200-acre tract was

worth $2,000 at the time said Pete Fulbright, Sr., died. And they further found that the life estate owned by the widow of the second marriage in said 200 acres was worth $1,450. The theory on which the trial court acted, it is assumed, was that the ownership of the 200 acres at the death of Pete Fulbright, Sr., passed (subject to an estate for life in the widow in one-third thereof, and to her right to use all of it as a homestead while she lived), one-third to Mrs. Rutherford, one-third to H. E. Fulbright, and one-third to the minor, Pete Fulbright, afterward Mrs. Deaver, with a right in said minor, in a partition thereof between her and Mrs. Rutherford and H. E. Fulbright, to have them account for the value of the 175 acres at the time Pete Fulbright, Sr., conveyed same to them. Vernon's Statutes, art. 2467. The jury having found that the 175 acres was worth $2,000 at that time, that the 200 acres at the date of Pete Fulbright, Sr.'s, death was worth a like sum, and that the value of the life estate of the widow in the 200 acres was worth $1,450, the court concluded, it seems, that the value of the 200 acres, less the value of the widow's life estate in a part of it, and charged as it was with the right of the widow to use same as a homestead while she lived, was less than one-half the value of the 175 acres conveyed to Mrs. Rutherford and H. E. Fulbright, and therefore that they were not entitled to have any part of the 200 acres set apart to them in a partition. We think the conclusion the court reached was warranted by the testimony in the case.

There is no error in the judgment, and it is affirmed.